[Cite as *State v. Gutierrez*, 2025-Ohio-1884.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| State of Ohio, | : | Case No. 24CA24 |
| Plaintiff-Appellee, | : | <u>DECISION AND</u> <u>JUDGMENT ENTRY</u> |
| v. | : | |
| Bethany Gutierrez, | : | **RELEASED 5/22/2025** |
| Defendant-Appellant. | : | |

_____

<u>APPEARANCES</u>:

Brian T. Goldberg, Schuh & Goldberg, LLP, Cincinnati, Ohio, for appellant.

Jeffrey C. Marks, Ross County Prosecuting Attorney, and Pamela C. Wells, Ross County Assistant Prosecuting Attorney, Chillicothe, Ohio, for appellee.

_____

Hess, J.

{¶1}   Bethany Gutierrez appeals from a judgment of the Ross County Court of Common Pleas convicting her of one count of corrupting another with drugs and one count of trafficking in a fentanyl-related compound.  Gutierrez presents three assignments of error asserting that the trial court erred to her prejudice by (1) accepting a plea of guilty that was not made knowingly, voluntarily, and intelligently; (2) denying her motion to withdraw her plea of guilty and not affording her a full hearing on the motion; and (3) failing to comply with the sentencing requirements in R.C. 2929.19(B)(2)(c).  For the reasons which follow, we overrule the first and second assignments of error and sustain

the third assignment of error.  We vacate Gutierrez's sentence and remand for resentencing.  We affirm the trial court's judgment in all other respects.

## I.  FACTS AND PROCEDURAL HISTORY

{¶2}    On May 8, 2020, an indictment was filed charging Gutierrez with two counts: Count One, corrupting another with drugs in violation of R.C. 2925.02, and Count Two, trafficking in a fentanyl-related compound in violation of R.C. 2925.03.[1] The indictment stated that Count One was a second-degree felony and Count Two was a fifth-degree felony. The trial court conducted an arraignment hearing at which Gutierrez pleaded not guilty. On March 5, 2021, a second indictment was filed under the same case number charging Gutierrez with two counts. The only difference between the counts in the first and second indictments is that the second indictment stated that the drug involved in Count One was "any compound, mixture, preparation, or substance included in Schedule I or II."  The bill of particulars identified the specific drug as fentanyl and/or carfentanil. The trial court conducted a second arraignment hearing at which Gutierrez pleaded not guilty to the second indictment, which the trial court referred to as a "superseding indictment" without objection.

{¶3}    The matter was set for a jury trial, which was continued multiple times, until April 19, 2022.  On April 18, 2022, Gutierrez executed a guilty-plea form stating that she was pleading guilty to Counts One and Two. The form stated Count One had a basic prison term of 2-8 years and possible fine of $15,000 and Count Two had a basic prison term of 6-12 months and possible fine of $2,500. The form stated:  "I understand the MAXIMUM penalty COULD be: a maximum prison term of 13 years, of which 0 is

---

[1] The language used specifically implicated R.C. 2925.02(A)(3) and R.C. 2925.03(A)(1).

mandatory, during which I am NOT eligible for judicial release or community control. The maximum fine possible is $17,500$^{00}$, of which $_____ is mandatory." The form indicates the parties agreed to jointly recommend a four-to-six-year prison sentence, and the State agreed to not indict Gutierrez in an unindicted second-degree felony case. Gutierrez also executed a "notice of non-life felony indefinite prison term" which provided information on the indefinite prison sentence to which she would be subject.

{¶4}    During the change of plea hearing, with respect to Count One, the court explained Gutierrez was subject to an indefinite sentence, meaning "you're going to receive both a minimum and maximum sentence." The court stated that it "picks the minimum term from the range of your penalties of [sic] for your crime, and for your crime it would be somewhere between two and eight . . . or somewhere from two eight years [sic], and then the maximum term will automatically be the minimum term plus fifty percent of the minimum term." Therefore, the maximum penalty she faced on Count One was "12 years." The court explained it was possible to earn good time credit against the minimum sentence for good behavior, but the court had the right to deny it. The court explained she would be released after her minimum term "unless D.R.C. determines that you must remain in prison for bad conduct" and that she had to be released at the end of the maximum term. The court also explained there was "a possible fine of up to 15,000 dollars." With respect to Count Two, the court explained that the crime was "punishable by a term of imprisonment between 6 and 12 months, and a fine of up to 2,500 dollars." The court explained that it could impose court costs and order restitution. The court explained post-release control for each count and the consequences of a post-release control violation. Gutierrez indicated she understood each matter. After the post-release

control discussion, the court stated, "Do you understand that, in this case, because this isn't a mandatory sentence you could be placed on community control for up to five years instead of being sent prison [sic]?" She said, "Yes."

{¶5} After additional discussion, the court accepted Gutierrez's guilty plea and found her guilty. The court told her it intended "to honor the negotiations" unless she got in trouble before or failed to appear at sentencing, in which case "all bets are off." Gutierrez indicated she understood.

{¶6} The trial court set the matter for sentencing in May 2022, but Gutierrez did not appear. Defense counsel told the court that Gutierrez had called his office and indicated she was undergoing medical treatment. The court ordered that her bond be revoked and a warrant issue for her arrest.

{¶7} In March 2023, Gutierrez was arrested, and a sentencing hearing occurred. The court issued a judgment entry of sentence ordering her to serve 8 to 12 years in prison on Count One and 12 months on Count Two, to be served concurrently. The court did not impose a fine but ordered restitution.

{¶8} Gutierrez appealed, but we dismissed the appeal for lack of jurisdiction. *State v. Gutierrez*, 2024-Ohio-1404, ¶ 1 (4th Dist.). We explained that Gutierrez had evidently pleaded guilty to and was convicted of the two counts in the second indictment and that the trial court did not dispose of the counts in the first indictment via journal entry. *Id.* Thus, the entry from which she appealed was not a final, appealable order. *Id.*

{¶9} The trial court scheduled the matter for a resentencing hearing. During the hearing, the court orally dismissed the first indictment, and Gutierrez moved to withdraw her guilty plea to the second indictment. The court asked what the basis for the motion

was. Defense counsel stated: "The first is, I understand from her appeal that she did challenge the as one of her appeal [sic]-her voluntariness of her plea at one point. The second would be that part of her basis of a plea was the state's promise not to indict on an unindicted F2." The trial court stated, "They have not done that have they?" Defense counsel stated:

> No, Your Honor. But I tried to find out more information about this from the time between when I was appointed and this date and I was unable to find information about this case and it may not – that may have been more of a [sic] illusory threat than she thought. She advises that she was not sure what the conduct was that they were talking about without, wasn't sure that was clear in the initial plea. So, it sounds like, from my point of view, that she may not have gotten the benefit of a bargain on that particular point.

> And the last, Your Honor, is that we are aware the original bargain was for four years and that due to other things –

The court interrupted and stated it was four to six years. Defense counsel then stated that Gutierrez previously got a sentence of 8 to 12 years. The court explained that she got that sentence because she "failed to appear at the disposition and she was found hiding . . . in a crawl space or something and they had to bring her back in by force at a later date." Defense counsel stated, "But, the position would be that she did not receive the sentence that she initially bargained for at the time she entered the plea. So, for those reasons we would ask to withdrawal [sic] the plea."

{¶10} The court denied the motion and stated: "This is exactly what buyer's remorse is. Based on her actions, the court decided that the original negotiated sentence between the parties that had been presented to the court was not appropriate and proceeded to sentence her as the court felt was appropriate." The court asked if defense counsel wished to say anything further before the court imposed a sentence. Defense counsel told the court that Gutierrez told him that she did not appear at the initial

sentencing hearing because she was in the hospital, and counsel asked the court to impose the bargained for sentence. The court again imposed a sentence of 8 to 12 years in prison on Count One and 12 months on Count Two, to be served concurrently. The court stated that it was the court's understanding that Gutierrez was "a pauper" and would be "submitting a pauper's affidavit." Defense counsel indicated he would, and the court stated that it would not impose a fine on either count. However, the court did order restitution.

**{¶11}** After the resentencing hearing, Gutierrez filed a motion, supported by an affidavit, asking the court to forgive her obligation to pay the mandatory fine on the ground that she was indigent and lacked funds to pay it. The court issued an entry stating that "for good cause shown, the mandatory fine levied in this matter is hereby excused." The court also issued an entry which memorialized the dismissal of the first indictment and set forth the sentence on the second indictment.

## II. ASSIGNMENTS OF ERROR

**{¶12}** Gutierrez presents three assignments of error:

First Assignment of Error: The trial court erred to the prejudice of Ms. Gutierrez by accepting a plea of guilty that was not made knowingly, voluntarily, and intelligently.

Second Assignment of Error: The trial court erred to the prejudice of Ms. Gutierrez by denying her motion to withdraw her plea of guilty and not affording her a full hearing on the motion.

Third Assignment of Error: The trial court erred to the prejudice of Ms. Gutierrez by failing to comply with the sentencing requirements contained in R.C. 2929.19(B)(2)(c).

### III. VALIDITY OF GUILTY PLEA

**{¶13}** In the first assignment of error, Gutierrez contends the trial court erred to her prejudice by accepting a plea of guilty that was not made knowingly, voluntarily, and intelligently. "Because a . . . guilty plea involves a waiver of constitutional rights, a defendant's decision to enter a plea must be knowing, intelligent, and voluntary." *State v. Dangler*, 2020-Ohio-2765, ¶ 10. "If the plea was not made knowingly, intelligently, and voluntarily, enforcement of that plea is unconstitutional." *Id.* "'An appellate court determining whether a guilty plea was entered knowingly, intelligently, and voluntarily conducts a de novo review of the record to ensure that the trial court complied with the constitutional and procedural safeguards.'" *State v. Sillman*, 2024-Ohio-3363, ¶ 22 (4th Dist.), quoting *State v. Moore*, 2014-Ohio-3024, ¶ 13 (4th Dist.).

**{¶14}** "Ohio's Crim.R. 11 outlines the procedures that trial courts are to follow when accepting pleas." *Dangler* at ¶ 11. "[T]he rule 'ensures an adequate record on review by requiring the trial court to personally inform the defendant of his [or her] rights and the consequences of his [or her] plea and determine if the plea is understandingly and voluntarily made.'" *Id.*, quoting *State v. Stone*, 43 Ohio St.2d 163, 168 (1975). Our focus on review is not on whether the trial court recited the exact language of Crim.R. 11, but "on whether the dialogue between the court and the defendant demonstrates that the defendant understood the consequences" of the plea. *Id.* at ¶ 12.

**{¶15}** Gutierrez's arguments implicate nonconstitutional aspects of the plea colloquy under Crim.R. 11(C)(2)(a), which states:

> (2) In felony cases the court . . . shall not accept a plea of guilty . . . without first addressing the defendant personally . . . and doing all of the following:

(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

**{¶16}** "When a criminal defendant seeks to have [a] conviction reversed on appeal, the traditional rule is that [the defendant] must establish that an error occurred in the trial-court proceedings and that [the defendant] was prejudiced by that error." *Dangler*, 2020-Ohio-2765, at ¶ 13. Thus, "when a trial court fails to fully cover . . . 'nonconstitutional' aspects of the plea colloquy, a defendant must affirmatively show prejudice to invalidate a plea." *Id.* at ¶ 14. "The test for prejudice is 'whether the plea would have otherwise been made.'" *Id.* at ¶ 16, quoting *State v. Nero*, 56 Ohio St.3d 106, 108 (1990). However, the Supreme Court of Ohio has held that "a trial court's *complete* failure to comply with a portion of Crim.R. 11(C) eliminates the defendant's burden to show prejudice." (Emphasis in original.) *Id.* at ¶ 15. "Properly understood, the questions to be answered are simply: (1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?" *Id.* at ¶ 17.

### A. Mandatory Fine

**{¶17}** Gutierrez contends the trial court failed to advise her of the maximum penalty she faced because she was "not properly notified of the mandatory fine" for Count One. Gutierrez contends that pursuant to R.C. 2925.02(D)(1)(a), she was subject to a mandatory fine of at least $7,500 for Count One, but the guilty-plea form "is blank where it states whether the fine is mandatory," and the trial court failed to notify her of "the mandatory $7,500 fine." Citing *State v. West*, 1993 WL 87678 (8th Dist. Mar. 25, 1993),

and *State v. McGinnis*, 2009-Ohio-6102 (8th Dist.), she asserts that the Eighth District Court of Appeals has held that a plea is not knowing, intelligent, and voluntary when the accused is not informed of a mandatory fine. Citing *State v. Rogers*, 2020-Ohio-4102 (12th Dist.), she asserts that the Twelfth District Court of Appeals "has similarly held that failure to advise a defendant that he faces a mandatory fine is a basis to vacate a plea of guilty." She relies on *Rogers* for the position that the trial court completely failed to comply with Crim.R. 11(C) by not addressing the mandatory fine, which excuses her from showing prejudice.

### 1. Case Law

{¶18} In *West*, the defendant pleaded guilty to multiple offenses in two cases. *West* at *1. In one of the cases, the sentence included a mandatory $5,000 fine. *Id.* The Eighth District found it was "apparent from the record that the trial court did not inform [the defendant] of the mandatory $5,000 fine until *after* the guilty plea was accepted" and that nothing in the record indicated that he "was aware of the maximum penalty applicable to his offenses, or that the court so informed him." (Emphasis in original.) *Id.* at *2. Therefore, "the trial court was not in substantial compliance with Crim.R. 11(C)," and the appellate court reversed the trial court's judgment. *Id.*

{¶19} In *McGinnis*, the defendant pleaded guilty to attempted drug trafficking, a third-degree felony, and drug trafficking, a fourth-degree felony. *McGinnis* at ¶ 2. The Eighth District reversed the conviction on the attempt count. *Id.* at ¶ 11. The appellate court found the trial court did not substantially comply with Crim.R. 11(C)(2) because it failed to inform the defendant "of the mandatory penalty involved" before accepting his guilty plea on the attempt count. *Id.* at ¶ 10. The appellate court explained that the trial

court told the defendant that "he was subject to a fine of up to $15,000" for that count but not that "he was responsible for the mandatory fine of $5,000." *Id.* Citing *West,* the appellate court found the defendant was "unaware of the full extent of the charges and penalties associated with" that count and "thus, did not enter his guilty plea to this charge knowingly, intelligently, and voluntarily." *Id.*

{¶20} However, in a more recent case, *State v. Mackey*, 2013-Ohio-4698 (8th Dist.), the Eighth District rejected the contention that a defendant's guilty pleas should be vacated because the trial court did not advise him of the mandatory minimum fine for two counts. *Mackey* at ¶ 4. The trial court advised the defendant regarding prison time for those counts and that those counts were each punishable by a fine of up to $15,000. *Id.* at ¶ 8. The appellate court found that "[a]lthough the judge did not tell [the defendant] that the mandatory minimum fine on each count was $7,500, she advised him, as required by Crim.R. 11(C)(2)(a), of 'the maximum penalty involved' on each count." *Id.* at ¶ 8. The appellate court explained that while "it may have been preferable for the judge to have advised [the defendant] of the mandatory minimum fine, nothing in Crim.R. 11 requires the trial court to advise the defendant of the minimum sentence." *Id.*, citing *State v. Miller,* 1997 WL 360882 (10th Dist. June 30, 1997). And because the defendant indicated "he understood the trial court's explanation of the maximum possible penalties associated with each count," the appellate court found substantial compliance with Crim.R. 11. *Id.* The appellate court also noted that a defendant "must show prejudice before a plea will be vacated for a trial court's error involving Crim.R. 11(C) procedure when nonconstitutional aspects of the colloquy are at issue," *id.* at ¶ 9, and that the defendant had not met his burden to show prejudice that would necessitate vacating his plea, *id.* at

¶ 13. The appellate court did, however, "reverse the trial court's sentencing judgment" on one count because the record reflected that the trial court never took a plea on that count. *Id.* at ¶ 15.

**{¶21}** In *Rogers*, the defendant pleaded guilty to three counts, and during the plea colloquy, the trial court did not advise the defendant of the maximum fines or the $7,500 mandatory fine for one of the counts. *Rogers*, 2020-Ohio-4102, at ¶ 3, 5 (12th Dist.). At sentencing, the trial court imposed the mandatory $7,500 fine. *Id.* at ¶ 6. On appeal, the defendant asserted he did not knowingly, intelligently, or voluntarily enter his guilty plea because the court failed to comply with Crim.R. 11(C)(2)(a) by not advising him of the mandatory fine during the plea colloquy. *Id.* at ¶ 10. He also argued that the court failed to advise him of the possible maximum fines on all counts. *Id.* at ¶ 10, fn.1.

**{¶22}** The Twelfth District reversed. *Id.* at ¶ 30. The appellate court found that the possible maximum fines were not imposed by the trial court, so any issue relating to them was moot. *Id.* at ¶ 10, fn. 1. With respect to the mandatory fine which was imposed, the court found that "a $7,500 fine was a mandatory element of [the] sentence pursuant to R.C. 2925.03(D)(1) and 2929.18(B)(1)" and "was therefore a component of the maximum penalty under Crim.R. 11(C)(2)(a)." *Id.* at ¶ 13. The appellate court explained that "'a trial court's mention of a component of the maximum penalty during a plea colloquy, albeit incomplete or perhaps inaccurate, does not constitute a complete failure to comply with Crim.R. 11(C)(2)(a).'" *Id.* at ¶ 19, quoting *State v. Fabian*, 2020-Ohio-3926, ¶ 20 (12th Dist.). But a "'total failure to inform a defendant of a distinct component of the maximum penalty during a plea colloquy constitutes a complete failure to comply with Crim.R. 11(C)(2)(a), thereby requiring the vacation of the defendant's guilty or no

contest plea.'" *Id.*, quoting *Fabian* at ¶ 20.  The trial court "did not simply misinform [the defendant] about the fine, such as the amount or whether it was mandatory or discretionary."  *Id.* at ¶ 23.  Rather, the trial court "made no mention of the fine during the plea colloquy."  *Id.*  Therefore, the trial court completely failed to comply with a portion of Crim.R. 11(C), and no showing of prejudice was required.  *Id.* at ¶ 23-24.

### 2.  Analysis

**{¶23}**  R.C. 2925.02(D)(1)(a) provides that for a second-degree felony violation of R.C. 2925.02(A), "the court shall impose upon the offender the mandatory fine specified for the offense under [R.C. 2929.18(B)(1)] unless, as specified in that division, the court determines that the offender is indigent."  R.C. 2929.18(B)(1) states that for a second-degree felony violation of R.C. Chapter 2925, "the sentencing court shall impose upon the offender a mandatory fine of at least one-half of, but not more than, the maximum statutory fine amount authorized for the level of the offense pursuant to division (A)(3) of this section."  R.C. 2919.18(B)(1) further states that "the court shall not impose the mandatory fine" if the offender "alleges in an affidavit filed with the court prior to sentencing that the offender is indigent and unable to pay the mandatory fine and if the court determines the offender is an indigent person and is unable to pay the mandatory fine described in this division[.]"  R.C. 2929.18(A)(3)(b) authorizes a fine of "not more than fifteen thousand dollars" for a second-degree felony.  Therefore, for Count One, the trial court had to impose a fine of at least $7,500, but not more than $15,000, unless the court determined Gutierrez was indigent as specified in R.C. 2929.18(B)(1).

**{¶24}**  Initially, we observe that the State asserts that "the issue of notification of a fine is not at issue here at all because the trial court did not assess a mandatory fine . . .

." To the extent the State suggests Gutierrez's fine-related argument is moot, we disagree. "An issue is moot 'when it has no practical significance and, instead, presents a hypothetical or academic question.'" *State ex rel. Ford v. Ruehlman*, 2016-Ohio-3529, ¶ 55, quoting *State v. Moore*, 2015-Ohio-2090, ¶ 7 (4th Dist.) The issue of whether we should vacate Gutierrez's guilty plea on the ground that it was not knowing, voluntary, and intelligent when entered due to the trial court's failure to properly advise her regarding the fine for Count One is not a hypothetical or academic question simply because the court did not impose a fine when it later sentenced her.

**{¶25}** However, Gutierrez's position that the trial court had to advise her of the $7,500 mandatory minimum fine to comply with Crim.R. 11(C)(2)(a)'s requirement that the court determine that she understood the "maximum penalty involved" is not well-taken. The "maximum penalty" is "[t]he heaviest punishment permitted by law." *Black's Law Dictionary* (12th Ed. 2024). The trial court advised Gutierrez of the heaviest fine permitted by law for Count One, $15,000, and Gutierrez confirmed she understood. We agree with *Mackey* that while an advisement about the $7,500 mandatory minimum fine may have been preferable, "nothing in Crim.R. 11 requires the trial court to advise the defendant of the minimum sentence." *Mackey*, 2013-Ohio-4698, at ¶ 8 (8th Dist.), citing *Miller*, 1997 WL 360882 (10th Dist.). The Eighth District's earlier decisions in *West* and *McGinnis* and the decision in *Rogers* do not persuade us otherwise. Thus, we conclude the trial court did not violate Crim.R. 11(C)(2)(a) by failing to notify Gutierrez of the mandatory minimum fine for Count One.

## B.  Reagan Tokes Law Notifications

**{¶26}**  The Reagan Tokes Law "relates to a defendant's maximum penalty."  *State v. Clark*, 2024-Ohio-4930, ¶ 10 (4th Dist.).  Effective March 22, 2019, the Reagan Tokes Law "implemented a system of indefinite sentencing for non-life felonies of the first and second degree committed on or after the effective date."  *Id.* at ¶ 12, citing *State Jones*, 2024-Ohio-2034, ¶ 22 (11th Dist.).  If a court imposing a sentence for a second-degree felony elects or is required to impose a prison term pursuant to R.C. Chapter 2929, "the prison term shall be an indefinite prison term with a stated minimum term selected by the court of two, three, four, five, six, seven, or eight years and a maximum term that is determined pursuant to [R.C. 2929.144] . . . ."  R.C. 2929.14(A)(2)(a).  There is a presumption that the offender "shall be released from service of the sentence on the expiration of the offender's minimum prison term or on the offender's presumptive earned early release date, whichever is earlier."  R.C. 2967.271(B).  A presumptive earned early release date is a date determined under procedures described in R.C. 2967.271(F) "by the reduction, if any, of an offender's minimum prison term by the sentencing court and the crediting of that reduction toward the satisfaction of the minimum term."  R.C. 2967.271(A)(2).  The department of rehabilitation and correction ("DRC") may rebut the presumption in R.C. 2967.271(B) if it determines, at a hearing, that one or more statutorily enumerated circumstances applies.  R.C. 2967.271(C).  If DRC rebuts the presumption, it "may maintain the offender's incarceration" after the expiration of the minimum prison term or presumptive earned early release date for a reasonable period, determined and specified by DRC, which "shall not exceed the offender's maximum prison term."  R.C. 2967.271(D)(1).

**{¶27}** Gutierrez suggests the trial court failed to ensure she understood the maximum penalty because she was "not advised during the plea colloquy of the consequences she faced by entering a Reagan Tokes plea." Gutierrez maintains that because Count One was a second-degree felony, "she was subject to an indeterminate sentence" under the Reagan Tokes Law, but the trial court "minimally explained this." Gutierrez acknowledges that she signed the indefinite prison term notice but claims the trial court "did not ensure she understood what it was that she was signing." She asserts that "[t]he only mention of indefinite sentences during the plea was that she would receive a minimum and maximum sentence," that "she would be released after serving the minimum term unless D.R.C. determines she needs to stay longer for bad behavior," and that "she had to be released upon completion of the maximum sentence." Citing R.C. 2967.271(C) and (F), she claims the court "failed to discuss the rebuttable presumption of early release at the end of her minimum term, criteria for the DRC to rebut the presumption, or any specific details about her ability to early [sic] a reduction of her minimum prison term."

**{¶28}** The "notice of non-life felony indefinite prison term" Gutierrez executed contains notifications that R.C. 2929.19(B)(2)(c) requires a trial court give an offender at the sentencing hearing if the court imposes a non-life felony indefinite prison term. The court must explain "[t]hat it is rebuttably presumed that the offender will be released from service of the sentence on the expiration of the minimum prison term imposed as part of the sentence or on the offender's presumptive earned early release date, as defined in section 2967.271 of the Revised Code, whichever is earlier." R.C. 2929.19(B)(2)(c)(i). The court must also provide certain information on DRC's ability to rebut the presumption

and maintain the offender's incarceration, R.C. 29291.19(B)(2)(c)(ii)-(iv), and the court must explain that if the offender has not been released prior to the expiration of the maximum prison term imposed as part of the sentence, "the offender must be released upon the expiration of that term," R.C. 2929.19(B)(2)(c)(v).

{¶29} During the plea colloquy, the trial court asked whether Gutierrez read and understood the indefinite prison term notice she signed, and Gutierrez indicated she did. It is true that when the court went on to discuss the sentence for Count One, the court did not use the phrase "rebuttable presumption" in describing DRC's ability to maintain her incarceration, explain all the criteria in R.C. 2967.271(C) for rebutting the presumption, or explain the specific details in R.C. 2967.271(F) about reducing a minimum prison term. However, Gutierrez presents no legal authority to support the position that a trial court must discuss such matters during the plea colloquy to determine that a defendant understands the maximum penalty involved with a Reagan Tokes Law sentence for purposes of Crim.R. 11(C)(2)(a).

{¶30} In *Clark*, we recently considered whether a plea was invalidated due to alleged deficient Reagan Tokes Law notifications. *Clark*, 2024-Ohio-4930, ¶ 16 (4th Dist.). We explained that during the plea colloquy, the trial court discussed a form indicating the maximum prison term for the count at issue and that the prison sentence was mandatory, and the trial court addressed the defendant and explained the maximum penalty of 8-12 years and mandatory sentence. *Id.* at ¶ 23. We found that "while the trial court was required to give the Reagan Tokes notifications to [the defendant] at sentencing, nothing mandates that these notifications be given prior to [the defendant's] entrance of his plea." *Id.* We found the record reflected that "the trial court substantially

complied with its duty to provide an explanation of the maximum sentence," and the defendant's "argument that his plea was not entered knowingly, intelligently, or voluntarily based solely upon the lack of Reagan Tokes notifications is without merit." *Id.* Consistent with *Clark*, we conclude the trial court did not violate Crim.R. 11(C)(2)(a) by failing to discuss the Reagan Tokes related matters which Gutierrez has identified during the plea colloquy.

### C.  Mandatory Prison Term and Eligibility for Community Control

**{¶31}**  Gutierrez maintains that pursuant to R.C. 2925.02(C)(1)(a) a prison term was mandatory for Count One, but she was improperly advised that prison time was not mandatory and that she was eligible for community control.  During the plea colloquy, the court did not tell Gutierrez that a prison term was mandatory for Count One, which made her ineligible for community control sanctions in lieu of prison on that count.  To the contrary, the court told her that "in this case" prison was not mandatory, and Gutierrez could be placed on community control instead. The State asserts that when read in context, the phrase "in the case" refers to Count Two rather than the "court case."  But the trial court did not limit its statement to Count Two, nor were its comments about post-release control immediately before this statement limited to Count Two, which suggests this statement pertained to both counts.  Thus, the court incorrectly indicated that for Count One, a prison term was not mandatory, and Gutierrez was eligible for community control sanctions.  Gutierrez told the court she understood this incorrect advisement before entering her guilty plea.  Therefore, we conclude the trial court did not comply with Crim.R. 11(C)(2)(a).

### 1.  Is the Burden to Show Prejudice Excused?

**{¶32}**  Gutierrez relies on *State v. Brigner*, 2015-Ohio-2526 (4th Dist.), to support the position that the trial court wholly failed to comply with Crim.R. 11(C)(2)(a), excusing her from the burden to show prejudice.  In *Brigner*, the defendant pleaded guilty to rape charges for which prison was mandatory.  *Brigner* at ¶ 12.  During the plea colloquy, the trial court did not tell the defendant that by pleading guilty, he would be subject to a required prison term, which would render him ineligible for community control sanctions in lieu of prison.  *Id.* at ¶ 5.  Instead, the court told the defendant there was a presumption that it would impose prison time.  *Id.* at ¶ 5.  At the sentencing hearing, the court also indicated there was a presumption of imprisonment and that it could impose community control, but the court imposed prison time.  *Id.* at ¶ 6.  On appeal, the defendant asserted the trial court failed to comply with Crim.R. 11(C)(2)(a), and the State agreed his plea was not knowing, intelligent, and voluntary.  *Id.* at ¶ 12-13.

**{¶33}**  We reversed the convictions and sentence.  *Id.* at ¶ 19.  We explained that the defendant "was improperly advised of his maximum sentence and his ineligibility for community control sanctions in lieu of prison at his change of plea hearing."  *Id.* at ¶ 12. We found "the trial court did not substantially comply with the notification requirement of Crim.R. 11(C)(2)(a) by wholly failing to advise [the defendant] that he was subject to a mandatory prison term, which made him ineligible for community control sanctions in lieu of prison," so "his plea was not knowingly, voluntarily, and intelligently made."  *Id.* at ¶ 14. We explained that even if the defendant and his counsel believed community control was unlikely, that understanding would not constitute substantial compliance because of the mandatory nature of the sentence.  *Id.*  We further explained that "by specifying that a

prison sentence was only presumed and reiterating that it could impose community control sanctions, the trial court reinforced the parties' misunderstanding that the trial court was authorized to impose community control," and the defendant and defense counsel "requested community control sanctions in lieu of prison based on that misunderstanding." *Id.* We held that "[u]nder these circumstances, the trial court wholly failed to comply with Crim.R. 11(C)(2)(a) and an additional analysis of prejudice is unnecessary." *Id.* We also found that even if prejudice was required, the defendant had shown it because his actions and the actions of his counsel established that he proceeded with his guilty plea based on his ability to argue that he should be subjected to community control sanctions instead of prison. *Id.*

**{¶34}** However, in a more recent Supreme Court of Ohio case, *State v. Straley*, 2019-Ohio-5206, the defendant entered guilty pleas to eight counts, three of which were sexual battery counts which required mandatory prison terms. *State v. Straley*, 2019-Ohio-5206, ¶ 2-3. The State agreed to dismiss the remaining counts, and the parties agreed to recommend an aggregate sentence of 35 years and 10 months. *Id.* at ¶ 2. The guilty-plea form indicated prison was presumed, and not mandatory, for the sexual battery counts. *Id.* at ¶ 3. During the plea colloquy, the trial court told the defendant "none of his prison sentences were mandatory and that while it would not impose community control, Ohio law allowed community control to be imposed[.]" *Id.* at ¶ 4. The court accepted the guilty plea and imposed the agreed-upon aggregate sentence. *Id.* The defendant later filed a post-sentence motion to withdraw his guilty plea under Crim.R. 32.1. *Id.* at ¶ 6. The trial court overruled the motion on the grounds that it was barred by res judicata, the defendant did not show that he would not have pleaded guilty if the court had told him

about the mandatory sentences, and the defendant waited eight years to file the motion. *Id.* at ¶ 16. We reversed, *id.* at ¶ 7, but the Supreme Court reversed our judgment and reinstated the trial court's judgment, *id.* at ¶ 28.

{¶35} The Supreme Court agreed with the trial court that the defendant "did not show that any error caused him to forgo trial and plead guilty instead." *Id.* at ¶ 17. He never made such an argument to the trial court, and the facts surrounding the plea belied such an argument. *Id.* The Supreme Court explained:

> The guilty-plea form Straley signed provided the maximum sentences for each count to which Straley was pleading guilty and informed Straley that the court could impose consecutive sentences on the counts. It included the state's sentencing recommendation as to each count, including the state's recommendation that the sentences be served consecutively. The trial court reviewed the maximum sentences with Straley four times during the plea colloquy. Straley confirmed that he understood both the maximum sentence the court could impose and that the court could order the sentences to be served consecutively. Although the trial court mistakenly told Straley it was "legally possible" for the court to order community control, the trial court then clearly told Straley "it's not going to happen in this case." Straley confirmed he understood that.

*Id.* The Supreme Court explained that the defendant also confirmed he understood the trial court did not have to follow the sentencing recommendation. *Id.* at ¶ 18. And despite this discretion, the trial court imposed the agreed aggregate prison sentence. *Id.* There was no manifest injustice because the defendant received "the aggregate sentence to which he agreed in exchange for his guilty plea" and "could not have reasonably expected to serve any less than that sentence." *Id.* at ¶ 18.

{¶36} The Supreme Court rejected the defendant's contention that he did not need to show prejudice "because the trial court's misstatements had the same effect as a complete failure to satisfy Crim.R. 11." *Id.* at ¶ 19. The Supreme Court explained that

the trial court here did not wholly fail to comply with Crim.R. 11.  Crim.R. 11(C)(2)(a) requires that a defendant understand the "nature of the charges against him and the maximum penalty involved" in order for his plea to be knowing, intelligent, and voluntary. As stated, the trial court reviewed the maximum sentences with Straley four times during the plea colloquy, and Straley confirmed that he understood the maximum sentence on each count to which he intended to plead guilty.  The guilty-plea form Straley signed also outlined the maximum sentences.  Under these circumstances, Straley must show that the trial court's misstatements prejudiced him.

*Id.* at ¶ 19.  The Supreme Court found that because the defendant could not show he suffered prejudice, the trial court did not abuse its discretion in denying his motion to withdraw his guilty plea.  *Id.* at ¶ 22.  The Supreme Court then also found the trial court did not abuse its discretion in concluding res judicata barred the motion.  *Id.* at ¶ 23.[2]

**{¶37}** Here, as in *Straley*, the trial court incorrectly indicated during the plea colloquy that prison time was not mandatory and that Gutierrez was eligible for community control sanctions on a count for which she was not eligible for them.  However, the trial court described the maximum sentences during the plea colloquy, and Gutierrez confirmed she understood them.  Therefore, consistent with *Straley*, we conclude the trial court did not completely fail to comply with Crim.R. 11(C)(2)(a), so Gutierrez is not excused from the burden of demonstrating prejudice.  *See State v. Burns*, 2023-Ohio-3121, ¶ 20 (11th Dist.) (finding "[c]onsistent with *Straley*" that trial court did not completely fail to comply with Crim.R. 11(C)(2)(a) where defendant was "advised of the maximum sentence for each offense and indicated his understanding, despite not being advised of the mandatory nature of the sentence" for one count).[3]

---

[2] Now Chief Justice Kennedy concurred in judgment only, explaining she agreed res judicata barred the defendant's motion and that in her view, that conclusion eliminated any need to reach the motion's merits. *State v. Straley*, 2019-Ohio-5206, ¶ 29 (Kennedy, J., concurring in judgment only).
[3] We observe that *Burns* indicated *Straley* was a plurality opinion.  *State v. Burns*, 2023-Ohio-3121, ¶ 20 (11th Dist.).  However, it is a majority opinion—Justice French authored the opinion, Chief Justice O'Connor and Justice Fischer concurred, and Justice DeWine concurred with an opinion.

### 2. Has Prejudice Been Shown?

**{¶38}** Gutierrez suggests that even if prejudice is required, it is "apparent" pursuant to *State v. Ruby*, 2004-Ohio-3708 (4th Dist.). In that case, the defendant pleaded guilty to two counts, and the parties were free to argue sentencing. *Ruby* at ¶ 3. Both counts required prison terms, but during the plea colloquy, the trial court stated: "'If you were granted community control, which is a different word for probation, but if you were granted probation and you violated the terms of probation, you could be resentenced back to the amount of time in the original sentence.'" *Id.* at ¶ 4, 11. The court imposed prison time. *Id.* at ¶ 5. On appeal, the defendant asserted that the court failed to substantially comply with Crim.R. 11 and that his plea was not knowing, intelligent, and voluntary. *Id.* at ¶ 7. We reversed. *Id.* at ¶ 12.

**{¶39}** The lead opinion stated that "[a] defendant who challenges his guilty plea on the basis that it was not knowingly, intelligently, and voluntarily made must show a prejudicial effect." *Id.* at ¶ 10. The lead opinion explained that in *State v. Floyd*, 1993 WL 415287 (4th Dist. Oct. 13, 1993), we stated: "'The prejudice to a defendant is apparent when the court informs him/her that he/she is eligible for probation although it is actually unavailable. In such case, a defendant might be coerced into pleading guilty because of the possibility of probation.'" *Id.* at ¶ 10, quoting *Floyd* at *6. The lead opinion stated that "[i]n *Floyd,* the trial court erroneously informed the defendant at his change of plea hearing that the offense was not a probational offense, when in fact the defendant was eligible for probation." *Id.* at ¶ 10. *Floyd* "held that the defendant did not suffer any prejudice despite the trial court's misstatement, because the misstatement actually would have tended to induce the defendant not to plead guilty." *Id.* The lead opinion stated that

the situation in *Ruby* was "opposite that presented in *Floyd*" because the trial court indicated the defendant could get community control when his crimes carried mandatory prison sentences. *Id.* at ¶ 11. The lead opinion stated that "[a]s we noted in *Floyd,* the prejudice resulting from a trial court's misstatement that the defendant is eligible for community control, when in fact prison is mandatory, is apparent." *Id.* Therefore, the lead opinion concluded the record did not show the defendant knowingly, intelligently, and voluntarily entered his plea and found that he suffered prejudice. *Id.* One judge concurred in judgment only, and another judge dissented without opinion.

{¶40} Because a majority of the panel in *Ruby* did not agree on the reasoning, the analysis in the lead opinion is not binding. *In re Lawson*, 2007-Ohio-4939, ¶ 13 (3d Dist.). We also do not find that analysis persuasive. A defendant might plead guilty due to an incorrect belief that he or she is eligible for community control sanctions. However, the fact that a defendant was incorrectly advised on this point, standing alone, does not prove the defendant would not have entered the plea had the defendant been correctly advised.

{¶41} Gutierrez has not directed our attention to anything in the record indicating that if the trial court had advised her that prison was mandatory for Count One, making her ineligible for community control sanctions as to that count, she would not have pleaded guilty. Nor could we say that she was prejudiced based on the record before us. The parties agreed to jointly recommend a prison sentence, so Gutierrez could not have reasonably expected to receive community control. Because Gutierrez failed in her burden to show prejudice, she is not entitled to have her guilty plea vacated due to the incorrect advisement on mandatory prison time and community control for Count One.

D.  Summary

**{¶42}** For the foregoing reasons, we conclude the trial court did not err to Gutierrez's prejudice by accepting a plea of guilty that was not made knowingly, voluntarily, and intelligently.  Accordingly, we overrule the first assignment of error.

IV.  MOTION TO WITHDRAW GUILTY PLEA

**{¶43}**  In the second assignment of error, Gutierrez contends the trial court erred to her prejudice by denying her motion to withdraw her plea of guilty and not affording her a full hearing on the motion.  Crim.R. 32.1 states:  "A motion to withdraw a plea of guilty . . . may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."  In this case, the trial court resentenced Gutierrez following our dismissal of her first appeal for lack of jurisdiction, and the parties treat her oral motion to withdraw her plea at the resentencing hearing as a presentence motion.

**{¶44}**  "[A] presentence motion to withdraw a guilty plea should be freely and liberally granted."  *State v. Xie*, 62 Ohio St.3d 521, 527 (1992).  But "a defendant does not have an absolute right to withdraw a plea prior to sentencing."  *Id.*  "[T]he trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea."  *Id.*  "Absent an abuse of discretion on the part of the trial court in making the ruling, its decision must be affirmed."  *Id.*  To conclude an abuse of discretion occurred, "[w]e must find that the trial court's ruling was 'unreasonable, arbitrary or unconscionable.'"  *Id.*, quoting *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

**{¶45}**  Crim.R. 32.1 "gives no guidelines for a trial court to use when ruling on a presentence motion to withdraw a guilty plea."  *Xie* at 526.  "This court and others have

identified nine factors that appellate courts should consider when reviewing a trial court's decision regarding a presentence motion to withdraw a guilty plea[.]" *State v. Howard*, 2017-Ohio-9392, ¶ 24 (4th Dist.). They are:

> (1) whether "highly competent counsel" represented the defendant; (2) whether the trial court afforded the defendant "a full Crim.R. 11 hearing before entering the plea"; (3) whether the trial court held "a full hearing" regarding the defendant's motion to withdraw; (4) "whether the trial court gave full and fair consideration to the motion"; (5) whether the defendant filed the motion within a reasonable time; (6) whether the defendant's motion gave specific reasons for the withdrawal; (7) whether the defendant understood the nature of the charges, the possible penalties, and the consequences of his plea; (8) whether the defendant is "perhaps not guilty or ha[s] a complete defense to the charges"; and (9) whether permitting the defendant to withdraw his plea will prejudice the state.

(Bracketed text in original.) *Id.*, quoting *State v. McNeil*, 146 Ohio App. 3d 173, 176 (1st Dist. 2001). "Consideration of this 'non-exhaustive' list is a balancing test, and no one factor is conclusive." *State v. Estep*, 2024-Ohio-58, ¶ 18 (4th Dist.), quoting *State v. Ganguly*, 2015-Ohio-845, ¶ 14 (10th Dist.). "[T]he ultimate question is whether there exists a 'reasonable and legitimate basis for the withdrawal of the plea.'" *Id.*, quoting *Xie* at 527. "A mere change of heart is not a legitimate and reasonable basis for the withdrawal of a plea." *Howard* at ¶ 24.

{¶46} In *State v. Barnes*, 2022-Ohio-4486, the Supreme Court of Ohio "referenced the nine-factor test" but "neither applied it nor rejected it." *Estep* at ¶ 20. Instead, the court held that "when a defendant discovers evidence that would have affected his decision to plead guilty, he has a reasonable and legitimate basis to withdraw his guilty plea before sentencing." *Barnes* at ¶ 24. This case does not involve the discovery of such evidence, and Gutierrez applies the nine-factor test in her appellate brief. "[M]any appellate courts," including this one, have continued "to apply the nine-factor test for

withdrawal motions that do not involve the discovery of evidence that would have affected a defendant's decision to plead guilty." *Estep* at ¶ 20-21. Thus, we will review the nine factors.

### A. Highly Competent Counsel

{¶47} "Generally, courts begin with a presumption that a defendant had the benefit of competent counsel." *Id.* at ¶ 22, citing *State v. Delaney*, 2020-Ohio-7036, ¶ 25 (4th Dist.). In the guilty-plea form, Gutierrez indicated she was satisfied with the "advice, counsel and competence" of the attorney who represented her when she changed her plea. During the change of plea hearing, she also indicated that she was satisfied with that attorney's advice and counsel. On appeal, Gutierrez has not raised an ineffective assistance of counsel claim and concedes the record contains no evidence she "was not represented by highly competent counsel." Thus, we conclude the first factor weighs against the motion.

### B. Full Crim.R. 11 Hearing

{¶48} Gutierrez contends she was not afforded a full Crim.R. 11 hearing because "numerous errors were made during the plea colloquy which should render the plea invalid" as argued in her first assignment of error. However, we overruled that assignment of error, and she does not allege any other deficiencies in the Crim.R. 11 hearing. Thus, we conclude the second factor weighs against the motion.

### C. Full Hearing on Motion to Withdraw

{¶49} Gutierrez contends the trial court "did not hold a full hearing on the request to withdraw the plea of guilty" because the court "heard very limited arguments on the motion" and "immediately proceeded to deny" it. She asserts that at the very least, the

court could have continued the resentencing hearing so her attorney could file a more detailed motion and given her an opportunity to call witnesses.

**{¶50}** Although *Xie* states that a hearing on a presentence motion to withdraw is mandatory, *Xie* "'does not define the type of hearing that is required.'" *State v. Harmon*, 2021-Ohio-2610, ¶ 18 (4th Dist.), quoting *State v. Wolfson*, 2003-Ohio-4440, ¶ 16 (4th Dist.). We have stated that "'a hearing complying with at least the minimum mandates of due process is necessary.'" *Id.*, quoting *Wolfson* at ¶ 16. "Thus, the trial court must afford the defendant meaningful notice and a meaningful opportunity to be heard." *Wolfson* at ¶ 16. However, the court "retains discretion to define the scope of the hearing to '"reflect the substantive merits of the motion."'" *Harmon* at ¶ 18, quoting *Wolfson* at ¶ 16, quoting *State v. Wright*, 1995 WL 368319, *6 (4th Dist. June 19, 1995).

**{¶51}** "If a trial court invites and hears argument on a motion to withdraw a guilty plea at a sentencing hearing before it imposes sentence, this procedure may constitute a full and fair motion hearing." *Id.* at ¶ 25, citing *State v. Griffin*, 2004-Ohio-1246, ¶ 18 (8th Dist.). The court "need not conduct a full evidentiary hearing if a defendant fails to '"make a prima facie showing of merit * * *."'" (Omission in original.) *Id.* at ¶ 20, quoting *State v. Smith*, 1992 WL 369273, *5 (8th Dist. Dec. 10, 1992), quoting *State v. Hall*, 1989 WL 42253, *1 (8th Dist. Apr. 27, 1989). "'Bold assertions without evidentiary support' ordinarily will not merit a full evidentiary hearing." *Id.*, quoting *Hall* at *1.

**{¶52}** The trial court held a full hearing on Gutierrez's oral motion. The court invited and heard argument on the motion, and defense counsel failed to make a prima facie showing of merit which would warrant a full evidentiary hearing. First, counsel asserted Gutierrez challenged the voluntariness of her plea in the first appeal but did not

explain why. Second, counsel asserted Gutierrez "may not" have gotten the benefit of her bargain regarding the unindicted second-degree felony case. Counsel stated that he unsuccessfully tried to find information about the case, that the threat of indictment "may have been more" illusory than Gutierrez thought, and that she told counsel "she was not sure what the conduct was that they were talking about." It is evident from these statements that counsel had no evidence the threat of indictment was in fact illusory. Moreover, the record reflects that during a status conference which occurred the day Gutierrez entered her guilty plea, her then-attorney told the trial court that he had gotten discovery on the unindicted case. That attorney had not yet spoken to Gutierrez, but he presumably did so before she entered her guilty plea as she indicated that she was satisfied with that attorney's advice in the guilty-plea form and at the change of plea hearing. Third, counsel asserted Gutierrez did not receive the sentence she bargained for during the first sentencing hearing. But before the court accepted the guilty plea, the court asked Gutierrez if she understood the court did not have to accept anyone's sentencing recommendation, and she indicated she did. As the court indicated, the reason Gutierrez did not receive the recommended sentence was that she failed to appear for sentencing even though the court warned her that "all bets are off" if that happened. Thus, we conclude the third factor weighs against the motion.

### D. Full and Fair Consideration to Motion

{¶53} Gutierrez contends the trial court did not give full and fair consideration to her motion because the court denied it "immediately after it was made after hearing very little arguments on the motion." We disagree. Although the court denied the motion right after defense counsel finished his arguments, the court provided some reasoning for its

decision, and counsel did not make a prima facie showing of merit which would warrant further scrutiny.  Thus, the fourth factor weighs against the motion.

### E.  Timing of the Motion

**{¶54}** Gutierrez contends that she made her oral motion within a reasonable time because she made it before the trial court resentenced her. "Generally, a motion to withdraw a guilty plea made on the day of the sentencing hearing is not made at a reasonable time." *Estep*, 2024-Ohio-58, at ¶ 30 (4th Dist.).  In this case, Gutierrez made an oral motion to withdraw during the resentencing hearing and has offered no reason why she could not have filed a written motion before then.  Thus, we conclude the fifth factor weighs against the motion.

### F.  Specific Reasons for Withdrawal

**{¶55}** Gutierrez provided specific reasons for why she wanted to withdraw her plea, so the sixth factor weighs in favor of the motion.  But as we previously explained, Gutierrez failed to make a prima facie showing that those reasons had merit, so we conclude this factor carries little weight.

### G.  Nature of the Charges, Possible Penalties, and Consequences of Plea

**{¶56}** Gutierrez contends she did not understand the nature of the charges, possible penalties, or consequences of her guilty plea because as "addressed in the first assignment of error," the trial court did not tell her that she faced a mandatory fine or was ineligible for community control.  However, as we previously explained, the trial court did not have to determine Gutierrez understood the mandatory minimum fine on Count One to comply with Crim.R. 11(C)(2)(a), and Gutierrez failed to show prejudice from the trial

court's failure to tell her she was ineligible for community control on Count One. Thus, we conclude the seventh factor weighs against the motion.

### H. Possible Defenses or Innocence

**{¶57}** Gutierrez contends she "did deny some of the conduct that the State had threatened to charge her with if she did not enter a plea of guilty." However, defense counsel said Gutierrez told him she was not sure what the conduct underlying the unindicted offense was, not that she was innocent. Gutierrez also did not assert any defenses or claim innocence as to the indicted offenses. Thus, we conclude the eighth factor weighs against the motion.

### I. Prejudice to the State

**{¶58}** Gutierrez contends nothing in the record indicates the State would be prejudiced if she were permitted to withdraw her plea. The State contends it would suffer immeasurable prejudice if Gutierrez was allowed to withdraw a plea regarding an incident which occurred in January 2020. The State claims that when Gutierrez entered her guilty plea, "many witnesses were necessary and had been subpoenaed, such that much time and effort had already been expended in the case at the time." The State also asserts that it is unclear whether its government witnesses are still government employees.

**{¶59}** One would expect some prejudice given the time which has elapsed since the offenses occurred. But nothing in the record indicates that any witnesses would be unavailable for trial or that the State would suffer prejudice "beyond the ordinary impact of any defendant's subsequent withdrawal of a guilty plea." *State v. Harris,* 2010-Ohio-4127, ¶ 26 (10th Dist.). Thus, we conclude the ninth factor weighs in favor of the motion. However, the lack of information in the record from the State regarding prejudice is

understandable given the fact that Gutierrez did not make her motion to withdraw until the resentencing hearing. Therefore, we conclude this factor carries little weight.

### J. Balancing of Factors

{¶60} The trial court did not abuse its discretion when it denied the motion to withdraw; the court's implicit determination that there was no reasonable and legitimate basis for the withdrawal of the guilty plea was not unreasonable, arbitrary, or unconscionable. The only factors which weigh in favor of granting the motion are that Gutierrez gave specific reasons for the withdrawal and nothing in the record indicates that permitting her to withdraw the plea will prejudice the State more than granting any motion to withdraw would. And as we already explained, these factors carry little weight under the circumstances. Because the trial court did not err to the prejudice of Gutierrez by denying her motion to withdraw her plea of guilty and not affording her a full hearing on the motion, we overrule the second assignment of error

### V. SENTENCING

{¶61} In the third assignment of error, Gutierrez contends the trial court erred to her prejudice by failing to comply with the sentencing requirements in R.C. 2929.19(B)(2)(c). Gutierrez claims the statute requires that a trial court give a defendant certain notifications at a sentencing hearing involving a Reagan Tokes sentence, and the court "only complied in part with some of the required notifications" in this case. Thus, her sentence is contrary to law.

{¶62} The State contends the trial court properly sentenced Gutierrez. The State claims Gutierrez "received the entire litany" of statutory notices plus "a summary description" of them because: (1) the day she entered her guilty plea, she signed a

document which provided the requisite notifications; (2) at the change of plea hearing, the trial court paraphrased the statute and asked her questions to determine if she understood the indefinite sentencing structure; (3) at the resentencing hearing, the court paraphrased the statute; and (4) the resentencing entry contained the requisite notifications. So even if the court did not read the statute verbatim at the resentencing hearing, Guitierrez "cannot show how she was prejudiced at all."

### A. Standard of Review

**{¶63}** R.C. 2953.08(A)(4) authorizes a defendant who pleads guilty to a felony to appeal as a matter of right the sentence imposed upon the defendant on the ground that it is "contrary to law." R.C. 2953.08(G)(2) states:

> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
>
> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> (b) That the sentence is otherwise contrary to law.

**{¶64}** Gutierrez did not object to the R.C. 2929.19(B)(2)(c) notifications at sentencing and has thus forfeited all but plain-error review. *State v. Price*, 2024-Ohio-1641, ¶ 7 (4th Dist.), citing *State v. Whitaker*, 2022-Ohio-2840, ¶ 166. A party asserting plain error must demonstrate that an obvious error occurred and that there is a reasonable probability it resulted in prejudice, meaning it affected the outcome of the proceeding. *See State v. Knuff*, 2024-Ohio-902, ¶ 117. "'It is well settled that a sentence that is

contrary to law is plain error and an appellate court may review it for plain error.'" *Price*

at ¶ 7, quoting *State v. Burrell*, 2024-Ohio-638, ¶ 14 (11th Dist.). "A sentence is contrary

to law if a trial court sentences an offender to an indefinite prison term under the Reagan

Tokes Law and fails [to] advise the offender of all the notifications set forth in R.C.

2929.19(B)(2)(c) at the sentencing hearing." *Id.*, citing *State v. Long*, 2021-Ohio-2672, ¶

27-29 (4th Dist.), *rev'd on other grounds In re Cases Held for the Decision in State v.*

*Maddox*, 2022-Ohio-1352, ¶ 1.

### B.  Statutory Notifications

**{¶65}**  R.C. 2929.19(B)(2)(c) states:

(2) . . . [I]f the sentencing court determines at the sentencing hearing that a prison term is necessary or required, the court shall do all of the following:

(c) If the prison term is a non-life felony indefinite prison term, notify the offender of all of the following:

(i) That it is rebuttably presumed that the offender will be released from service of the sentence on the expiration of the minimum prison term imposed as part of the sentence or on the offender's presumptive earned early release date, as defined in section 2967.271 of the Revised Code, whichever is earlier;

(ii) That the department of rehabilitation and correction may rebut the presumption described in division (B)(2)(c)(i) of this section if, at a hearing held under section 2967.271 of the Revised Code, the department makes specified determinations regarding the offender's conduct while confined, the offender's rehabilitation, the offender's threat to society, the offender's restrictive housing, if any, while confined, and the offender's security classification;

(iii) That if, as described in division (B)(2)(c)(ii) of this section, the department at the hearing makes the specified determinations and rebuts the presumption, the department may maintain the offender's incarceration after the expiration of that minimum term or after that presumptive earned early release date for the length of time the department determines to be reasonable, subject to the limitation specified in section 2967.271 of the Revised Code;

(iv) That the department may make the specified determinations and maintain the offender's incarceration under the provisions described in divisions (B)(2)(c)(i) and (ii) of this section more than one time, subject to the limitation specified in section 2967.271 of the Revised Code;

(v) That if the offender has not been released prior to the expiration of the offender's maximum prison term imposed as part of the sentence, the offender must be released upon the expiration of that term.

"While the trial court is not required to recite the statutory language verbatim in providing the notifications to the defendant at sentencing, the record must nonetheless reflect that each of the necessary notifications were provided." *State v. Brown Suber*, 2021-Ohio-2291, ¶ 17 (12th Dist.).

## C.  Analysis

**{¶66}** At the resentencing hearing, the trial court failed to give Gutierrez all the notifications required by R.C. 2929.19(B)(2)(c).  The trial court stated:

[B]ecause she has an indefinite sentence in this matter and a minimum and maximum term, DRC may notify the court of an intent to award a good time reduction of five to fifteen percent of her sentence.  There's a presumption that she gets that credit unless the court holds a hearing and determines otherwise.  It's also presumed that she will be released from prison at her minimum sentence, unless DRC makes certain findings about her conduct while in prison.  Finally, she must be released at the expiration of her maximum term.  If she's eligible she may earn days of credit under the circumstances specified in O.R.C. [2967.193].

Although the trial court provided some of the statutorily required information at the sentencing hearing, it is evident the court did not provide all of it at that time.  For example, the court did not provide all the information in R.C. 2929.19(B)(2)(c)(ii) about DRC's ability to rebut the presumption regarding release or tell Gutierrez, as required by R.C. 2929.19(B)(2)(c)(iii), that DRC may maintain her incarceration for the length of time it determines is reasonable, subject to the limitation specified in R.C. 2976.271.  It is immaterial whether Gutierrez received the statutory notifications at other times.  *See State*

*v. Dunn*, 2024-Ohio-4555, ¶ 5, 7 (4th Dist.) (vacating sentence and remanding for resentencing where defendant was advised of R.C. 2929.19(B)(2)(c) factors at the change of plea hearing and in the plea agreement but not at the sentencing hearing). Because the trial court failed to comply with R.C. 2929.19(B)(2)(c), Gutierrez's sentence is contrary to law and plain error, and we sustain the third assignment of error.

## VI. CONCLUSION

**{¶67}** We overrule the first and second assignments of error, and we sustain the third assignment of error. We vacate Gutierrez's sentence and remand for resentencing. We affirm the trial court's judgment in all other respects.

JUDGMENT AFFIRMED IN PART<br>
AND VACATED IN PART.<br>
CAUSE REMANDED.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED IN PART AND VACATED IN PART and that the CAUSE IS REMANDED.  Appellant and appellee shall split the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Abele, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
        Michael D. Hess, Judge



**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**