[Cite as *State v. Jackson*, 2025-Ohio-369.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 113841 |
| FRANK JACKSON, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 6, 2025

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-23-684975-A, CR-23-685097-A, and
CR-23-686591-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph Lucchesi Assistant Prosecuting Attorney, *for appellee.*

The Law Office of Schlachet and Levy and Eric M. Levy, *for appellant.*

EMANUELLA D. GROVES, P.J.:

{¶ 1} Defendant-appellant, Frank Jackson ("Jackson"), appeals his convictions and sentences for vandalism, breaking and entering, and other charges. For the reasons that follow, we affirm.

## Factual and Procedural History

{¶ 2}   Jackson was indicted in three separate cases.  On September 18, 2023, in C.P. No. CR-23-684975-A ("CR-23-684975-A"), Jackson was charged with breaking and entering in violation of R.C. 2911.13(A), a felony of the fifth degree (Count 1) and petty theft in violation of R.C. 2913.02(A)(1), a misdemeanor of the first degree (Count 2).  The victim in this case was General Electric.

{¶ 3}   On October 2, 2023, in C.P. No. CR-23-685097-A ("CR-23-685097-A"), Jackson was charged with vandalism in violation of R.C. 2909.05(B)(1)(a), a felony of the fourth degree (Count 1); breaking and entering in violation of R.C. 2911.13(B), a felony of the fifth degree (Count 2); and theft in violation of R.C. 2913.02(A)(1) a felony of the fifth degree (Count 3).  The victim in this case was Baird Properties LTD ("Baird").

{¶ 4}   Finally, on November 8, 2023, in C.P. No. CR-23-686591-A ("CR-23-686591-A"), Jackson was charged with breaking and entering in violation of R.C. 2911.13(B), a felony of the fifth degree (Count 1); vandalism in violation of R.C. 2909.05(B)(1)(a), a felony of the fourth degree (Count 2); and grand theft in violation of R.C. 2913.02(A)(1), a felony of the fourth degree (Count 3).  Michael Duganitz, the codefendant in this case, was charged with receiving stolen property, a felony of the fourth degree.  The victim in this case was also Baird.

{¶ 5}   Jackson entered into a negotiated plea deal on February 20, 2024. The case was originally scheduled for trial on that date; however, a new attorney filed a notice of appearance as Jackson's representative.  The court noted that it had

discussed the case with Jackson's new counsel and the prosecutor and found that the lawyer had sufficient knowledge of the case to discuss plea agreements. The court also noted that Jackson's new lawyer did not physically have all the evidence though the prosecutor had briefed him.

{¶ 6} Jackson pleaded guilty to the breaking and entering charge (Count 1) in CR-23-684975-A; the vandalism and breaking and entering charges in CR-23-685097-A (Counts 1 and 2); and the breaking and entering, vandalism, and grand theft charges in CR-23-686591-A (Counts 1, 2, and 3). The State dismissed the remaining charges (Count 2 in CR-23-684975 and Count 3 in CR-23-685097).

{¶ 7} At the sentencing hearing, Jackson's attorney raised his status as a ward of the probate court for the first time. Counsel did not challenge Jackson's competency to enter his plea but felt the court should be aware of the status when considering sentencing. Counsel submitted a copy of the probate court's order to the court, which the court indicated it had received previously from Jackson's daughter. On reviewing the order, the court found that it did not designate Jackson as incompetent, but rather addressed Jackson's substance abuse and that his thought processes are normal unless he discusses substance abuse. Sentencing tr. 46-47, 116.

{¶ 8} The trial court proceeded with sentencing, first considering whether any of the charges would merge with one another. The State argued that none of the counts should merge, while the defense argued that the crimes were allied offenses of similar import that should be merged. The court ultimately found that the three

cases do not merge with one another and that the individual counts within each case do not merge.

{¶ 9} In CR-23-684975-A, the trial court sentenced Jackson to 12 months on the breaking and entering charge; in CR-23-685097-A, 18 months on the vandalism charge, and 12 months on the breaking and entering charge; and in CR-23-686591-A, 12 months on the breaking and entering charge; 18 months on the vandalism charge; and 18 months on the grand theft charge. The court ordered each case be served consecutively to one another. With respect to CR-23-685097-A, the court found that Counts 1 and 2 run consecutively with each other. With respect to CR-23-686591-A, the court found that Counts 1 and 3 run consecutively with one another. The court did not make a specific finding with respect to Count 2 in its entry; however, the court noted during sentencing that it intended to run Counts 1 and 3 consecutive and Count 2 concurrent. Sentencing tr. 134. The aggregate sentence was six years. Additionally, the trial court ordered Jackson to pay restitution to Baird in the amount of $30,613.00 on CR-23-686591-A, jointly and severally with his codefendant, and $138,888.00 on CR-23-685097-A.[1]

{¶ 10} Jackson appeals raising the following assigned errors for our review.

### Assignment of Error No. 1

The trial court erred when it failed to merge Jackson's convictions as allied offenses prior to sentencing.

---

[1] In his brief, Jackson argued that it was error to order restitution based on his inability to pay; however, he did not include the issue as a formal assignment of error. He seeks to preserve the challenge for later review, acknowledging that this court has previously ruled on this issue. *See State v. Thorp,* 2023-Ohio-3629 (8th Dist.).

## Assignment of Error No. 2

The maximum consecutive sentence imposed upon appellant Jackson is clearly and convincingly contrary to law.

## Assignment of Error No. 3

Trial counsel was ineffective in failing to request a competence evaluation of appellant Jackson and failing to review discovery prior to representing Jackson in entering his change of plea.

## Law and Analysis

## Merger of Offenses

{¶ 11}  In the first assignment of error, Jackson argues that the trial court erred when it found that his convictions were not subject to merger as allied offenses of similar import.

{¶ 12}  We review the decision on whether offenses should be merged as allied offenses of similar import under a de novo standard of review. *State v. Bailey*, 2022-Ohio-4407, ¶ 6, citing R.C. 2941.25, *State v. Williams*, 2012-Ohio-5699, ¶ 1.

{¶ 13}  When a defendant's conduct "supports more than one offense, . . ., a court must conduct an analysis of allied offenses of similar import to determine whether the offenses merge or whether the defendant may be convicted of separate offenses." *State v. Ruff*, 2015-Ohio-995, ¶ 24, citing R.C. 2941.25(B).  When offenses are found to be allied offenses of similar import, the defendant, though charged with two or more offenses, may only be convicted of a single offense.  *Id*. at ¶ 13, citing R.C. 2941.25(A).

In determining whether offenses merge, courts consider the defendant's conduct.  *State v. Johnson*, 2010-Ohio-6314, ¶ 44.  The

court must first determine if the multiple offenses can be committed by the same conduct. If so, then the court must determine whether the offenses were, in fact, committed by the same conduct, i.e., whether they were a single act committed with a single state of mind. *Id.* at ¶ 49. If the court answers both questions affirmatively, the offenses are allied offenses of similar import and will be merged. *Id.* at ¶ 50.

*State v. Gonzalez*, 2018-Ohio-1302, ¶ 17 (8th Dist.).

{¶ 14} A court must ask three questions when determining whether a defendant's conduct supports conviction on multiple offenses:

(1) Were the offenses dissimilar in import or significance – in other words, did each offense cause separate identifiable harm? (2) Were they committed separately? And (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

*Ruff* at ¶ 31.

{¶ 15} Since the three cases Jackson pleaded guilty to happened separately, the trial court properly found that the cases do not merge. The only issue is whether the counts in CR-23-685097-A merge with one another and whether the counts in CR-23-686591-A merge with one another.

{¶ 16} At the sentencing hearing, the trial court limited the State's recitation of facts. However, the trial court had ordered presentence investigations, which discussed the crimes in more detail; additionally, representatives of Baird testified at sentencing and submitted paperwork from their insurance company and repair estimates. In the first incident involving Baird, CR-23-685097-A, someone called 911 after they saw Jackson and an unknown accomplice on the rooftop of the property tearing apart metal structures and taking the metal to Jackson's yard.

Police arrived and caught Jackson on the roof. Jackson ultimately admitted his conduct. The owner and Baird's head of security testified that Jackson damaged eight HVAC units and three compressors in order to obtain scrap metal.

{¶ 17} Baird's insurance company sent out an adjuster to investigate the damage. The adjuster noted damage to ten HVAC systems. Three of the systems had their outdoor condensing units completely removed. Additionally, line sets were cut and left exposed, which allowed refrigerant to escape the refrigerant circuits. The exposed line sets compromised the indoor air handlers of these systems. In an additional seven systems, the evaporator coils were cut from the units. Additionally, large portions of the copper piping were removed and the paneling was dismantled. These actions also compromised the packaged units. The insurance adjuster also noted damage to the building, including damage to the parapet wall, a ripped awning, plus minor damage to a deck.

{¶ 18} Pursuant to the plea agreement, Jackson pleaded guilty to vandalism under R.C. 2909.05(B)(1)(a) and breaking and entering under R.C. 2911.13(B). The breaking and entering charge required proof that Jackson trespassed on the land or premises of another, with purpose to commit a felony. R.C. 2911.13(B). Evidence that a defendant trespassed on premises with purpose to commit a felony is sufficient, and the State need not prove that the defendant actually committed a felony. *State v. Sines-Riley*, 2024-Ohio-2860, ¶ 53 (4th Dist.). Jackson trespassed on the property by stealth with purpose to commit a felony, which was separate from the act of vandalism that allowed him to steal material from Baird's property.

Accordingly, the trial court did not err when it found the offenses were not allied offenses of similar import in CR-23-685097-A.

{¶ 19} In the second incident involving Baird, CR-23-686591-A, Jackson was captured on video surveillance equipment entering the property with a crowbar. Jackson then moved out of camera range but is later captured on video throwing items off of a deck onto the ground. Jackson is also seen dragging items from that location to the lot adjacent to his address and Baird. The property manager reported that Jackson damaged three rooftop HVAC systems and the estimated damage was at least $100,000. Jackson then enlisted the help of his codefendant, Duganitz, who sold 153 lbs. of radiator parts and 16 lbs. of copper to a scrap business shortly after the theft for little over $200. Baird had notified local scrap metal recyclers that Jackson was a known thief, which prevented Jackson from selling the scrap metal himself. Duganitz later admitted that he helped Jackson by selling these items. At the sentencing hearing, Baird presented evidence that the repair was over $100,000.

{¶ 20} Baird's insurance adjuster investigated this claim as well and found that there was damage to three additional rooftop HVAC air conditioner and heat pump package units, which were different from the ones originally damaged. On these three units, the coils were fully removed. In order to access the coils, the exterior paneling was completely disassembled, which structurally compromised the units and damaged the sheet metal. There was additional damage caused because the refrigerant circuit was left open and exposed the remaining compressors to contamination.

{¶ 21} In this case, Jackson pleaded guilty to vandalism, breaking and entering, and grand theft. In reviewing the record, we find that the record establishes that the crimes were committed separately and that the crime of theft was committed with a separate animus. Here, Jackson entered Baird's complex with a crowbar. This happened shortly after the trial court released him on bond for the crimes against Baird under CR-23-685097-A, a case where Jackson admitted his conduct. We find that the record reflects that Jackson completed the crime of breaking and entering when he entered the property with a crowbar with purpose to commit a felony, because his actions followed a common scheme and plan. Baird's representatives testified that Jackson entered their property by placing a ladder against their fence, which is adjacent to Jackson's property, and climbing on the roof to access the HVAC units. As we have noted, the State need not prove that the defendant actually committed the felony in order to be found guilty of breaking and entering under R.C. 2911.13(B). *Sines-Riley*, 2024-Ohio-2860, ¶ 53. Thus, the crime of breaking and entering was completed and separate from Jackson's subsequent actions once he entered the property with a tool to commit the crime.

{¶ 22} With respect to the crimes of vandalism and grand theft, Jackson entered the property and vandalized Baird's HVAC units to sell material he tore from them. Jackson not only stole from the units, he exposed dangerous materials that compromised the integrity of the equipment he left behind. Once the vandalism to obtain the materials was completed, Jackson continued the theft by using a confederate to sell the materials. Local scrap recyclers had been warned that

Jackson was likely selling stolen materials. The theft occurred over multiple days. Accordingly, the vandalism was separate from the theft, and the theft was committed with a separate animus. Based on the foregoing, we find that the trial court did not err when it refused to merge the three counts in CR-23-686591.

{¶ 23} Accordingly, the first assignment of error is affirmed.

**Maximum Consecutive Sentences**

{¶ 24} In the second assignment of error, Jackson argues that the trial court erred when it imposed maximum sentences and ran them consecutively. Jackson argues that the trial court failed to consider the purposes and principles of sentencing, the seriousness and recidivism factors, and the factors necessary to impose consecutive sentences under R.C. 2929.14(C)(4). Accordingly, Jackson argues that his sentences are contrary to law.

{¶ 25} Felony sentences are reviewed under R.C. 2953.08(G)(2), which allows a court of appeals to increase, reduce, modify, or vacate and remand a challenged felony sentence if the court clearly and convincingly makes either of two findings. *State v. Artis*, 2022-Ohio-3819, ¶ 11 (8th Dist.). First that the record does not support the trial court's findings as required by certain sentencing statutes or that the sentences are otherwise contrary to law. *Id.*

{¶ 26} Preliminarily, we note that Jackson argues that the trial court was required to make a finding that Jackson committed the worst form of the offense or posed the greatest likelihood of committing future crimes before it could impose a maximum sentence. *See State v. Parker*, 144 Ohio App.3d 334 (8th Dist.). This was

the standard required under former R.C. 2929.14(C); however, based on constitutional grounds, that part of the statute was severed and is no longer part of the code. *State v. Keith*, 2016-Ohio-5234, ¶ 12 (8th Dist.), citing *State v. Foster*, 2006-Ohio-856, *State v. Combs*, 2013-Ohio-4816, ¶ 8-11 (2d Dist.).

{¶ 27} Now, a trial court may impose a maximum prison term for a felony and that sentence is not contrary to law "'as long as the sentence is within the statutory range for the offense, and the court considers the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the seriousness and recidivism factors set forth in R.C. 2929.12.'" *State v. Artis*, 2022-Ohio-3819, ¶ 12 (8th Dist.) quoting *State v. Seith*, 2016-Ohio-8302, ¶ 12 (8th Dist.). With respect to R.C. 2929.11 and 2929.12, it is well settled that neither statute is a factfinding statute that requires the trial court to make findings of fact on the record. *Id.* at ¶ 13. Further, the trial court is presumed to have considered those factors unless the defendant affirmatively shows otherwise. *Id.*, citing *State v. Pate*, 2021-Ohio-1089, ¶ 3 (8th Dist.). "A trial court's statement in its sentencing journal entry that it considered the required statutory factors is sufficient to fulfill its obligations under R.C. 2929.11 and 2929.12. *Id.*, citing *State v. Sutton*, 2015-Ohio-4074, ¶ 72; *State v. Clayton*, 2014-Ohio-112, ¶ 9.

{¶ 28} In each journal entry, the trial court noted that it considered all required factors of the law and that prison was consistent with the purpose of R.C. 2929.11. In the instant case, the trial court obtained presentence investigations for each case, heard from representatives of the victims, the representative of the State,

received reports on the damages, reviewed probate court records, heard from Jackson's family members, Jackson, and Jackson's counsel. Jackson has not affirmatively demonstrated that the trial court failed to consider these factors when imposing its sentence. Rather the record reflects that the trial court extensively reviewed Jackson's criminal history, his past outcome, and failures and successes in making its determination regarding his sentences. Additionally, the record demonstrates that each maximum sentence was within the statutory range.

{¶ 29} We next examine whether the trial court's imposition of consecutive sentences was clearly and convincingly not supported by the record. In order to sentence an offender to consecutive sentences, a trial court must find

> that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)

{¶ 30} Prior to imposing the sentence, the trial court noted that Jackson had an extensive criminal history and that these cases were his 83rd, 84th, and 85th cases. In addition to the property crimes, the court noted that thirty of Jackson's crimes were crimes against people, including domestic violence. The court noted that, while Jackson did complete treatment while in prison, he also was sentenced to treatment an additional nine times, and he did not complete the program, never went, or went capias.

{¶ 31} The trial court essentially found that Jackson would continue to commit crimes as long as he was physically able to do so and also that it was the court's responsibility to both punish Jackson and protect the public from future crime. Accordingly, the trial court made the appropriate findings to impose consecutive sentences under R.C. 2953.08(G)(2) and 2929.14(C)(4), additionally, the imposition of maximum sentences were not clearly and convincingly contrary to law.

{¶ 32} The second assignment of error is therefore overruled.

**Ineffective Assistance of Counsel**

{¶ 33} In the third assignment of error, Jackson argues he received ineffective assistance of counsel when his lawyer failed to request a competency evaluation and failed to review discovery prior to representing Jackson prior to entering his pleas of guilty.

{¶ 34} An appellant demonstrates ineffective assistance of counsel by showing that "(1) counsel's performance fell below an objective standard of

reasonable representation and (2) he was prejudiced by that performance." *State v. Morgan*, 2018-Ohio-1834, ¶ 10 (8th Dist.), citing *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984). In considering whether an attorney's performance fell below an objective standard of reasonableness, a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" *Strickland* at 689. Prejudice is established by showing that "there exists a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *State v. Davis*, 2020-Ohio-309, ¶ 10.

**Competency to Stand Trial**

{¶ 35} Jackson does not point to any evidence in the record that demonstrates he was incompetent to enter his plea; rather, Jackson argues that the probate court's decision that designated him a ward of the court in need of a guardian was sufficient to raise the issue of competency. Preliminarily, we note that Jackson's status was not raised at the plea hearing. The trial court went through a full Crim.R. 11 colloquy with Jackson in which Jackson did not raise any questions or indicate a failure to understand the proceedings.

{¶ 36} Generally, "[a] defendant is presumed to be competent to stand trial." R.C. 2945.37(G). If the issue of competency is raised prior to trial, the court is required to have a hearing to determine, by a preponderance of the evidence, whether the defendant is capable of "understanding the nature and objective of the proceedings against him or of assisting his counsel in his defense." R.C. 2945.37(B), (C), and (G). Counsel never raised competency as an issue. In fact, when he raised

Jackson's status with the probate court, counsel noted he was not challenging competency to stand trial but rather raising it as information for the court's consideration at sentencing. Sentencing tr. 44-45.

{¶ 37} Incompetence to stand trial has a specific meaning and should not be conflated with other designations of mental illness. The Ohio Supreme Court has noted that "'[i]ncompetency must not be equated with mere mental or emotional instability or even outright insanity. A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel.'" *State v. Were*, 2008-Ohio-2762, ¶ 47, quoting *Dusky v. United States,* 362 U.S. 402, 402 (1960).

{¶ 38} The probate court's determinations of competency are separate from that of a criminal court's determinations. *State v. Calabrese*, 2017-Ohio-7316, ¶ 18 (8th Dist.), citing *State v. Brooks*, 1992 Ohio App. LEXIS 357 (9th Dist. 1992). A criminal court has the responsibility of determining under R.C. 2945.37 whether a defendant is competent or has the mental capacity to be tried, and not the probate court. *Id.*

{¶ 39} In the instant case, the trial court had a copy of the probate court's order and found that it did not designate Jackson as incompetent, but rather recognized that his substance abuse impaired his thought processes. "A trial court's finding that a defendant is competent to stand trial will not be disturbed when there is some reliable and credible evidence supporting those findings." *Were*, 2008-Ohio-2762 at ¶ 46, citing *State v. Vrabel*, 2003-Ohio-3193, ¶ 33; *State v. Williams*,

23 Ohio St.3d 16, 19 (1986). Additionally, we give deference to the trial court's in-person observations. *Id.*, citing *State v. Cowans*, 87 Ohio St.3d 68, 84 (1999).

{¶ 40} Other than the probate court's designation, the record does not reflect that Jackson displayed any confusion or inability to understand the nature of the proceedings or an inability to assist his counsel in his defense. Based on the foregoing, the record does not reflect that counsel erred when he failed to request a competency hearing. As a defendant must meet both prongs of the test set out in *Strickland*, i.e., an error and that he was prejudiced by that error, Jackson has failed to establish he received ineffective assistance of counsel on this basis.

## Lack of Discovery

{¶ 41} Finally, Jackson argues that he received ineffective assistance of counsel when his newly retained lawyer represented him at the plea hearing without obtaining all of the discovery. The record reflects that Jackson was represented by a court-appointed representative from the public defender's office as of September 22, 2023. A representative of the public defender represented Jackson at the final pretrial, which was a week prior to trial. New counsel indicated he was retained on February 15, 2024, the Thursday before the February 20, 2024 trial date.

{¶ 42} Jackson does not argue that there was evidence in the discovery that aided his defense or mitigated his conduct. He merely argues that it was error for his new counsel to advise him at the plea hearing without reviewing all the discovery.

{¶ 43} Nevertheless, when a defendant enters a guilty plea, as Jackson did here, a defendant "waives ineffective assistance of counsel except to the extent that

the ineffective assistance of counsel caused the defendant's plea to be less than knowing, intelligent, and voluntary." *State v. Parham*, 2018-Ohio-1631, ¶ 32 (8th Dist.), citing *State v. Williams*, 2014-Ohio-3415, ¶ 11 (8th Dist.). Ineffective assistance of counsel may constitute such a manifest injustice that it warrants withdrawal of a guilty plea. *Id.*, citing *State v. Montgomery*, 2016-Ohio-2943, ¶ 4 (8th Dist.).

{¶ 44} In the instant case, Jackson has failed to cite any evidence in the record that his decision to plead guilty was less than knowing, intelligent, and voluntary. The trial court thoroughly and comprehensively reviewed the plea with Jackson, including questioning whether he understood the nature of the charges, his right to proceed to trial and that his plea would waive that right, and whether he was satisfied with his counsel's representation.

{¶ 45} In order to establish ineffective assistance of counsel at the plea hearing, Jackson needed to establish deficient performance of counsel and that "'there was a reasonable probability that but for counsel's deficient performance, the defendant would not have pled guilty to the offenses at issue and would have, instead, insisted on going to trial.'" *Id.*, quoting *Williams* at *id*. Jackson has failed to establish that but for counsel's actions he would not have entered the guilty pleas and insisted on going to trial.

{¶ 46} Accordingly, the third assignment of error is overruled.

{¶ 47} Judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Cases remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
WILLIAM A. KLATT, J.,* CONCUR

(*Sitting by assignment: William A. Klatt, J., retired, of the Tenth District Court of Appeals.)