[Cite as *State v. Reed*, 2025-Ohio-2753.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

STATE OF OHIO,                          :

        Plaintiff-Appellee,          :       Case No. 23CA4041

        v.                           :       DECISION AND JUDGMENT
                                     :       ENTRY

ROGER D. REED,                          :

        Defendant-Appellant.         :       **RELEASED: 07/29/2025**

_____

APPEARANCES:

Gene Meadows, Jackson, Ohio, for appellant.

Shane A. Tieman, Scioto County Prosecuting Attorney, and Jay S. Willis, Assistant Scioto County Prosecutor, Portsmouth, Ohio for appellee.

_____

Wilkin, J.

{¶1}   This is an appeal from a Scioto County Court of Common Pleas judgment entry of conviction resulting from appellant, Roger D. Reed's ("Reed"), plea to aggravated possession of drugs, a third-degree felony.  On appeal, Reed asserts he was denied effective assistance of counsel, which caused him to enter a guilty plea that was not knowing, voluntary or intelligent.  In addition, Reed claims the trial court abused its discretion in overruling his oral motion to withdraw his guilty plea.

{¶2}   After reviewing the record, the parties' briefs, and the applicable law, we find Reed did not receive ineffective assistance of counsel, and that his plea was knowing, voluntary and intelligent.  Further, we find the trial court acted within its discretion by denying Reed's motion to withdraw his guilty plea.  Thus, we affirm the trial court.

BACKGROUND

{¶3}   On February 28, 2020, a Scioto County Grand Jury indicted Reed with two felony counts:  Count 1, aggravated possession of drugs (methamphetamine) in violation of R.C. 2925.11(A) and R.C. 2925.11(C)(1)(b), a third-degree felony, and Count 2, possession of drugs (Buprenorphine), in violation of R.C. 2925.11(A) and R.C. 2925.11(C)(2)(a) (also alleging Adkins had been convicted of three previous drug offense convictions), a fifth-degree felony, for drugs recovered during a traffic stop.

{¶4}   On July 22, 2020, the State served upon defense counsel a Bill of Particulars and a "Response to Defendant's Request for Discovery Pursuant to Criminal Rule 16," which it also filed with the trial court.  On July 23, 2020, defense counsel filed a "Response to State's Demand for Discovery."

{¶5}   On July 31, 2020, Reed entered a plea of guilty to Count 1, aggravated possession of drugs, the third-degree felony, and Count 2 was dismissed by the agreement of the parties.  The parties recommended a nine-month prison sentence, and the trial court engaged in the requisite plea colloquy.  During the plea colloquy, Reed indicated he was satisfied with the assistance of his court-appointed counsel. Pending sentencing, the trial court granted the defense request to allow Reed to be released on his own recognizance so that he could spend time with a terminally ill relative.  However, the trial court specifically informed Reed, "[d]o you understand that [the court's] willingness to follow this joint recommendation will depend upon you complying [with] the terms and conditions of you[r] bond between now and the time set for your sentencing?", to which Reed answered affirmatively.  The court set a sentencing date for September 2, 2020.

**{¶6}** Despite Reed's acknowledgement that he could face an additional felony if he failed to appear and the court's admonition that its following the joint recommendation depended upon the conditions of bond, Reed failed to appear at sentencing in September 2020. Therefore, bench warrants were issued. Reed finally appeared for sentencing on July 12, 2023. Sometime between the plea and his sentencing hearing, he was also charged with failure to appear. On the same day, but prior to, sentencing, Reed made an oral motion to withdraw his plea – nearly three years after the plea hearing in July 2020. The trial court held a full hearing in which it permitted Reed to testify. After full consideration, the trial court denied the oral motion to withdraw the plea. Instead, the trial court sentenced Reed to 36 months in prison with a fine of $1,000, and optional post-release control for a period of 2 years. From this conviction, Reed asserts two assignments of error.

ASSIGNMENTS OF ERROR

I.      THE DEFENDANT-APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AT THE PLEA HEARING CAUSING THE DEFENDANT-APPELLANT TO ENTER A PLEA OF GUILTY THAT WAS NOT KNOWINGLY, INTELLIGENTLY, OR VOLUNTARILY MADE IN VIOLATION OF THE SIXTH AND FOURTH AMENDMENTS OF THE UNTIED STATES CONSTITUTION AND ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION.

II.     THE TRIAL COURT ABUSED ITS DISCRETION BY OVERRULING DEFENDANT-APPELLANT'S MOTION TO WITHDRAW HIS GUILTY PLEA.

I. First Assignment of Error

**{¶7}** In his first assignment of error, Reed claims his court-appointed counsel was ineffective and thus, his plea was not knowing, voluntary and intelligent. Specifically, he contends that his counsel did not provide a copy of discovery to him

despite his request, and further, that nothing in the record indicates he had talked with trial counsel about the contents of that discovery.  Reed claims that had he received the discovery, he would not have entered a plea and would have proceeded to trial instead. The State counters that Reed has not met his burden to show the plea is infirm, and the sentence imposed was authorized by law.  Additionally, the State argues that Reed has failed to overcome the presumption of effective representation of counsel, or that trial counsel was not acting within the parameters of sound trial strategy.  Further, the State asserts that Reed's claims of prejudice are speculative and points out that the trial court would have sentenced Reed to nine months instead of 36 months if he had simply shown up at sentencing when ordered to do so.

### A.  Law

{¶8}    "Generally, a guilty plea waives most appealable errors, except, for example, that a plea was not knowing, intelligent and voluntary."  *State v. Wheeler,* 2016-Ohio-5503, ¶ 5*,* quoting *State v. Robinson*, 2015-Ohio-2635, ¶ 45 (4th Dist.). Therefore, a guilty plea "waives the right to assert ineffective assistance of counsel unless the counsel's errors affected the knowing and voluntary nature of the plea." *State v. McMichael,* 2012-Ohio-3166, ¶ 14 (10th Dist.), citing *State v. Hill,* 2011-Ohio-2869, ¶ 15 (10th Dist.), citing *State v. Spates,* 64 Ohio St.3d 269, 272 (1992).

{¶9}    "To establish constitutionally ineffective assistance of trial counsel, a criminal defendant must show that (1) his counsel's performance was deficient, and (2) such deficient performance prejudiced his defense and deprived him of a fair trial." *Wheeler* at ¶ 4, citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984) and *State v. Issa*, 93 Ohio St.3d 49, 67 (2001).  " 'In order to show deficient performance, the

defendant must prove that counsel's performance fell below an objective level of reasonable representation.  To show prejudice, the defendant must show a reasonable probability that, but for counsel's error, the result of the proceeding would have been different.' " (emphasis omitted) *Id.* quoting *State v. Conway*, 2006-Ohio-2815, ¶ 95.

{¶10}  "In considering whether an attorney's performance fell below an objective standard of reasonableness, a reviewing court 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *State v. Jackson,* 2025-Ohio-369, ¶ 34 (8th Dist.), citing *Strickland* at 689.  In addition to establishing deficient performance, a defendant must show he was prejudiced as a result of counsel's actions.  *State v. Fluhart,* 2021-Ohio-2153, ¶ 34 (12th Dist.), citing *State v. Patrick,* 2016-Ohio-995, ¶ 13 (12th Dist.), citing *Strickland* at 687.  In the context of a guilty plea, "prejudice will not be found unless a defendant demonstrates there is a reasonable probability that, if not for counsel's errors, he would not have entered the plea."  *Id.* citing *State v. Tribune,* 2017-Ohio-1407, ¶ 7 (12th Dist.).

{¶11}  Reed asserts that he received ineffective assistance of counsel because he allegedly did not receive nor discuss discovery with counsel.  Therefore, Reed must show that there is a reasonable probability that he would not have entered his guilty plea if his trial counsel had provided him with the State's discovery.  *See State v. Perkins*, 2023-Ohio-139, ¶ 17 (6th Dist.) (where defendant's claims that he was unable to review the state's video evidence prior to entering his guilty plea failed because the record in the case did not support his claim).

B.  Analysis

**{¶12}**  Specifically, Reed alleges on appeal that prior to his plea his counsel did not provide him with discovery, nor did his counsel discuss discovery with him.  In the trial court his claim appears to be that he never saw discovery at any time, despite his requests, either before or after the plea.  However, it is somewhat unclear as to whether his assertions in the trial court were that his trial counsel did not *discuss* the contents of discovery with him at any time.  Further, other than his own statements, the record does not support his claim that he never received discovery.

**{¶13}**  "A defendant's own self-serving declaration or affidavits are insufficient to rebut a record that demonstrates that the plea was voluntary."  *State v. Jones*, 2011-Ohio-2903, ¶ 35 (7th Dist.), citing *State v. Lett,* 2010-Ohio-4188, ¶ 33 (7th Dist.).  In the trial court, Reed asserted the basis for his motion to withdraw the plea was that counsel had not provided him with discovery.  However, a thorough review of the record does not support that claim.  First, Reed's trial counsel at no time indicated she had not provided or reviewed the discovery with Reed.  Second, Reed never mentioned the issue of not receiving discovery during the pendency of the case (which exceeded three years) until after he was picked up on a longstanding warrant.  Third, the record indicates that defense counsel sought discovery and the State provided discovery to defense counsel.  Finally, and most importantly, Reed indicated he was satisfied with his counsel's advice at the plea hearing.

**{¶14}**  In addition to not affirmatively showing how his counsel was ineffective, Reed has not established prejudice.  At the plea hearing, Reed's counsel negotiated a favorable resolution wherein the second count of the indictment was dismissed, for

Reed's plea to the first count.  The joint recommendation for sentence was nine months, and Reed's counsel also convinced the trial court to allow Reed to report for sentencing several weeks in the future so he could be with a terminally ill relative.  Reed claims on appeal that his maximum exposure was 48 months, and that since he received 36 months, he may have been willing to risk the additional 12 months had he been convicted at trial.  However, at the plea hearing, the trial court indicated its intentions to follow the recommended sentence for nine months if Reed showed up for sentencing.  The trial court noted Reed's sentence was increased to 36 months only after he failed to appear at the original sentencing and also picked up more felony charges.

**{¶15}**  Further, neither in the trial court nor on appeal does Reed specifically point to what exactly in discovery would support his claims of "innocence" or that a motion to suppress would have been successful.  Instead, Reed's claims constitute mere speculation.  "As we have repeatedly recognized, speculation is insufficient to demonstrate the prejudice component of an ineffective assistance of counsel claim." *See e.g., State v. Tabor*, 2017-Ohio-8656, ¶ 34 (4th Dist.); *State v. Jenkins*, 2014-Ohio-3123, ¶ 22 (4th Dist.); *State v. Simmons*, 2013-Ohio-2890, ¶ 25 (4th Dist.).  Courts have overruled similar defense claims of ineffective assistance of counsel when defendants did not demonstrate prejudice.  *See, e.g., State v. Perkins,* 2023-Ohio-139 (6th Dist.) (where defendant argued he received ineffective assistance of counsel when his counsel failed to review with him the State's video surveillance evidence but failed to demonstrate prejudice); *State v. Reed,* 2022-Ohio-2538 (3d Dist.) (where defendant claimed that his trial counsel was ineffective because he did not discuss the case with

him, or timely review discovery with him, but defendant did not show affirmatively how he was prejudiced).  For these reasons, we overrule Reed's first assignment of error.

## II. Second Assignment of Error

**{¶16}**  In his second assignment of error, Reed asserts that the trial court abused its discretion by denying his pre-sentence oral motion to withdraw his guilty plea entered almost three years prior.  Reed addresses nine factors and claims after consideration of all those factors, the trial court abused its discretion by denying his motion.  He asserts that certain factors support the withdrawal of the plea, including his claims that (1) he received ineffective assistance of counsel, (2) he was not guilty, (3) he had not received discovery such that his plea was not knowing, intelligent and voluntary, and (4) the State would not be prejudiced by the withdrawal.  He further claims he was not given a full hearing because new counsel should have been appointed for him so that his previous counsel could have been a witness for him.

**{¶17}**  The State responds that the record reflects the trial court made the correct findings and applied the appropriate law to deny Reed's plea.  Further, the State asserts the findings weigh in the State's favor for denying Reed's motion.  In essence, the State emphasizes that Reed has not established prejudice because if he had appeared for his original sentencing hearing, he would have received a lesser sentence.  Thus, the essence of Reed's motion to withdraw the plea was actually a change of heart.

### A.  Law

**{¶18}**  Crim.R. 32.1 provides: "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant

to withdraw his or her plea.' " ' 'While trial courts should "freely and liberally" grant a presentence motion to withdraw a guilty plea, a defendant does not "have an absolute right to withdraw a guilty plea prior to sentencing." ' ' " *State v. Estep,* 2024-Ohio-58, ¶ 16 (4th Dist.), quoting *State v. Howard*, 2017-Ohio-9392, ¶ 21 (4th Dist.), quoting *State v. Xie,* 62 Ohio St.3d 521, 527 (1992). "Before ruling on a defendant's presentence motion to withdraw his plea, the trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for withdrawing the plea." *State v. Barnes,* 2022-Ohio-4486, ¶ 13, citing *Xie* at 527. "The determination whether there is a reasonable and legitimate basis for the defendant's request to withdraw his plea is 'within the sound discretion of the trial court.' " *Barnes* at ¶ 13, quoting *Xie* at paragraph two of the syllabus.

{¶19} A trial court therefore has broad discretion to grant or deny a presentence motion to withdraw a plea, and appellate courts will not reverse a trial court's decision absent an abuse of discretion. *Estep* at ¶ 17, citing *State v. Delaney,* 2020-Ohio-7036, ¶ 19 (4th Dist.). "Abuse of discretion" "implies that the court's attitude is unreasonable, unconscionable, or arbitrary." *Estep* at ¶ 17, quoting *State v. Brown,* 2017-Ohio-2647, ¶ 12, citing *State v. Adams,* 62 Ohio St.2d 151, 157 (1980).

{¶20} Generally, "courts have identified nine factors an appellate court should consider when it reviews a decision that involves a presentence motion to withdraw a guilty plea." *Estep.* at ¶ 18, citing *State v. Smith,* 2021-Ohio-4028, ¶ 18 (4th Dist.). These factors include:

> (1) whether "highly competent counsel" represented the defendant; (2) whether the trial court afforded the defendant "a full Crim.R. 11 hearing before entering the plea"; (3) whether the trial court held "a full hearing" regarding the defendant's motion to withdraw; (4) "whether the trial court

gave full and fair consideration to the motion"; (5) whether the defendant filed the motion within a reasonable time; (6) whether the defendant's motion gave specific reasons for the withdrawal; (7) whether the defendant understood the nature of the charges, the possible penalties, and the consequences of his [or her] plea; (8) whether the defendant is "perhaps not guilty or ha[s] a complete defense to the charges"; and (9) whether permitting the defendant to withdraw his [or her] plea will prejudice the state.

*Estep* at ¶ 18, citing *State v. Howard,* 2017-Ohio-9392 at ¶ 24 (4th Dist.).  We have observed that consideration of these factors is a balancing test wherein no one factor is conclusive, and further that the list is "non-exhaustive."  *Smith* at ¶ 18, citing *State v. Ganguly*, 2015-Ohio-845, ¶ 14 (10th Dist.).  The ultimate question is whether there is a "reasonable and legitimate basis for the withdrawal of the plea." *Id.* quoting *Xie*, 62 Ohio St.3d at 527.  Thus, "[a] mere change of heart is not a legitimate and reasonable basis for the withdrawal of a plea."  *Id.,* quoting *Howard* at ¶ 24, citing *State v. Campbell*, 2009-Ohio-4992, ¶ 7 (4th Dist.).

{¶21}  In *State v. Barnes*, 2022-Ohio-4486, the Supreme Court of Ohio "referenced the nine-factor test" but "neither applied it nor rejected it."  *Estep* at ¶ 20. Instead, the Supreme Court of Ohio held that "when a defendant discovers evidence that would have affected his decision to plead guilty, he has a reasonable and legitimate basis to withdraw his guilty plea before sentencing."  *State v. Gutierrez,* 2025-Ohio-1884 (4th Dist.), ¶ 46, citing *Barnes* at ¶ 24.  After *Barnes*, this court, along with other districts, have continued "to apply the nine-factor test for withdrawal motions that do not involve the discovery of evidence that would have affected a defendant's decision to plead guilty."  *Gutierrez* at ¶ 46, *Estep* at ¶ 20-21.  Thus, we must first determine whether this case is more similar to *Barnes* or more consistent with other cases that do not involve "newly discovered evidence."

**{¶22}** In *Barnes,* the accused had always asserted he acted in self-defense but plead guilty to involuntary manslaughter. *Barnes,* 2022-Ohio-4486, ¶ 6. At the hearing on the motion to withdraw, Barnes' attorneys testified they could not remember reviewing with him the video footage with audio, and Barnes testified he had not seen the footage with audio. Additionally, Barnes testified that because of his military training, the audio supported his claim of self-defense--a complete defense to the charge. *Barnes* at ¶ 8. Barnes moved to withdraw his plea the day of sentencing (about six weeks after the plea) and did not fail to appear at that sentencing. *Id.*

**{¶23}** In contrast, in the instant case, Reed made an oral motion to withdraw his plea almost two and a half to three years after sentencing. Reed testified at his hearing that he did not receive discovery before the plea; however, the trial court determined his testimony "did not make sense." Reed's testimony at the hearing when asked why he was moving to withdraw his plea is illustrative:

> Reed: Well, I asked three years ago for discovery, and I was just blew off, pretty much. And—because—because I know it—he—there was no right to even pull me over. . . . And I was on private property.
>
> Defense Attorney: And do you maintain that you are innocent of that charge?
>
> Reed: Yes.
>
> Defense Attorney: And did—that is the basis for why you're seeking to withdraw your former plea of guilty?
>
> Reed: Yes. Because you advised me that—well, you won't be able to get off on that. That's what you told me.
>
> Defense Attorney: Other—any other information—
>
> Reed: And I feel I've been greatly misrepresented.

Defense Attorney:  --like—you would like the Judge to know in support of your motion?

Reed:  Excuse me?

Defense Attorney:  Anything else you'd like the Judge to know in support of your motion to withdraw that plea?

Reed:  No, ma'am.

\* \* \*

Prosecutor:  So, the sole basis, as I understand it, and tell me if I'm wrong, is that you feel that you did not have an opportunity to go over discovery; is that correct?

Reed:  Yes, sir.  I asked her three years ago, I said, I would like to have—have discovery.  And she—she didn't say anything.

\* \* \*

Court:  Well, Mr. Reed, let me ask you a couple questions.  So, in 2020 you thought you'd worked out a good deal and you told me you were guilty; right?

Reed:  Um hmm.

Court:  Is that right?

Reed:  Yes, sir.

Court:  All right.  So, you don't show up for sentencing and now you've caught two more felonies and you're looking at more time, potentially, and now you think it's not a good deal; is that right?

Reed:  Yes, Your Honor.  Which [sic] all—all due respect to the Court—

Court:  I mean, that's—that's the difference, right?  You told me you were guilty, and now you want to say you're not guilty, but the only thing that's changed is you didn't show to court and you got--picked up on two more felonies?

Reed:  Well, see, that's why I'm asking for discovery.  [Well], I've been asking.  I asked her last week too.

Court:  Well, when I—when you entered your guilty plea you had discovery, because it was filed a week—over a week before.

Reed:  I haven't seen nothing.

Court:  Okay.  But you still told me you were guilty after it was filed.  So what's changed?

Reed:  Well, being clear mind now.  I haven't used any—

Court:  Well, I asked you before if you'd had any drugs or alcohol to use and you told me, no.  Are you telling me now you were lying to me?

Reed:  No, sir.  I was—

Court:  All right.  So you—

Reed:  --I was under drugs back then, you know, but—but

Court:  But at the time of your plea I would have asked you if you'd had anything to use in the 24 hours before, and you told me, no.

Reed:  Because I'd been in jail.

Court:  So, your change of heart is based on looking at more time?

Reed:  No, sir.  That—the trooper had no right to pull me over in the first place.

Court:  Well you – you knew that when – that—if that was your position, you knew that when you told me you were guilty.  So what's changed –

Reed:  No, I did not.

Court:  --from the time you told me you were guilty?

Reed:  I did not know that, sir.

Court:  What's changed from the time you told me you were guilty?

Reed:  I've got a clear mind.  I know what happened now.

After hearing from Reed, and arguments of counsel, the trial court applied a nine-factor test and denied the motion to withdraw.  Specifically, the trial court determined that Reed's stated reason for withdrawal "doesn't make sense," and was not a reasonable basis for withdrawing his plea, because the information was available to Reed at the time he entered his plea.  The court later noted that Reed provided nothing to the court

that suggested he was perhaps not guilty of the charges; rather, Reed's testimony was that he now wanted to argue grounds for the traffic stop, which was an issue Reed knew at the time he entered the guilty plea. The court found that the discovery was filed approximately eight days before the plea, and Reed's testimony that he "didn't see it" was not "credible."

{¶24} Thus, the instant case differs substantially from *Barnes*. First, Reed does not assert a complete defense to the charge, or profess his innocence, instead he asserts the "trooper had no right" to pull him over, which would involve a suppression issue. Also, unlike *Barnes,* Reed's counsel did not assert that Reed might not have received discovery. The record shows the discovery was provided timely by the State and given to defense counsel. Further, from his testimony, it appears Reed addressed suppression issues with counsel, and his counsel explained that a suppression motion would probably not be successful (defense counsel told him, "well, you won't be able to get off on that"). In fact, Reed claimed he had still not seen discovery before the July 2023 sentencing hearing, even after asking for it a "week before," yet he claimed he now knew "what happened." Finally, the trial court in the instant case found that Reed's testimony was not credible, so as matter of fact, the trial court did not believe Reed's bald assertion regarding not seeing the discovery or discussing it with counsel. Nothing other than Reed's self-serving, conflicting testimony indicates he did not review the discovery or State's evidence with his trial counsel.

{¶25} In similar circumstances, other courts have addressed *Barnes but* also applied a multi-factored evaluation in instances where the allegation of failure to provide discovery was the basis for the motion to withdraw the plea and that allegation was

questionable.  *See, e.g., State v. Shepherd,* 2025-Ohio-1779 (9th Dist.) (where the Ninth

District found *Barnes* to be inapposite because in *Barnes* it was undisputed that

evidence had been withheld from the defendant before he entered his plea, stating that

"[t]he Supreme Court did not address whether *Barnes* applies when the existence of

newly discovered evidence has been alleged but not established."); *State v. Kendricks,*

2024-Ohio-1779 (8th Dist.) (where the Eighth District upheld the application of a multi-

factored evaluation of the trial court's denial of motion to withdraw plea when defendant

claimed he was innocent and moved to withdraw his plea because he had claimed he

had never been provided discovery (among other complaints about counsel) but the

record reflected discovery had been served).

**{¶26}**  On appeal, both Reed and the State address the nine factors, and we

shall also discuss those in conjunction with his claims that he now "knows what

happened."

1.

**{¶27}**  The first factor is whether Reed received "highly competent counsel."

Although Reed claims counsel was ineffective at the plea hearing in his first assignment

of error, he specifically responded at the time of the plea that he was satisfied with the

advice of counsel, and counsel had managed to negotiate a nine-month plea deal for a

third-degree felony for Reed, who had several priors.  We addressed this claim in

Reed's first assignment of error.  As noted, Reed claimed counsel did not provide him

with discovery, but counsel did not testify to that effect.  In addition, the trial court also

addressed this issue and stated, "Mr. Reed was and is represented by highly effective

[c]ounsel," noting that his attorney had "been an experienced trial lawyer in this county for a number of years."

{¶28} The Third District addressed both ineffective assistance of counsel and a challenge to a motion to withdraw guilty plea upon claims similar to Reed's, *State v. Pettaway*, 2015-Ohio-226, ¶ 13-17, 37-39 (3d Dist.). Like Reed, Pettaway testified that his counsel had never shared discovery with him in the case. *Id.* at ¶ 14. Also, like Reed, Pettaway testified he had requested discovery from his counsel multiple times without success. *Id.* Pettaway claimed he first saw the discovery five months after he had entered his guilty plea, whereas Reed claimed he had never seen it. The Third District observed that the only evidence in the record that Pettaway had not seen the discovery came from his own "self-serving testimony." Like in Reed's case, the record indicated that Pettaway's counsel had received discovery by the State prior to the plea, and there was no evidence anywhere in the record that during prior court hearings Pettaway's counsel failed to show him discovery. *Id.* at ¶ 15. On the contrary, at the plea hearing, Pettaway responded to the trial court that he understood the nature of the charges against him. *Id.* Pettaway did not inform the trial court he had not received discovery at that time. Like Reed, Pettaway told the trial court that he was satisfied with his counsel's representation at the time he entered his guilty plea. The Third District therefore overruled Pettaway's claims of ineffective assistance of counsel and further overruled his assignment of error involving withdrawal of the plea.

{¶29} The facts in the instant case are almost identical to *Pettaway*. At no time during the plea hearing, despite several opportunities to do so, did Reed indicate he had not received or reviewed the discovery with counsel. Similarly, rather than claim

possible innocence of the charges, Pettaway claimed the State lacked probable cause for a search warrant and other suppression issues ("[Pettaway] testified that "basically the State doesn't even have anything," and claimed "the State lacked probable cause for the search warrant because in his understanding 'you can't get the search warrant off a hearsay' or a 'covert operation on somebody else.' " *Id.* at ¶ 37). The instant case differs from *Pettaway*, however, because here, Reed claimed he *had never received discovery*. Thus, Reed's claim that "I know what happened now," at least two and a half to three years later, is inconsistent with his claim that the discovery would somehow show a suppression issue. Such claim was mere speculation, even if one believes Reed's claims that he never actually received the discovery. We therefore conclude that this factor weighs in the State's favor.

2.

**{¶30}** The second factor is whether the trial court afforded the defendant a full Crim.R. 11 hearing before entering the plea. Reed does not challenge this factor on appeal. A review of the July 31, 2020 transcript of the plea hearing shows that the full hearing was held on the plea in which the trial court complied with Crim.R. 11. Further, the trial court discussed this factor in its findings regarding the motion to withdraw the plea and determined that Reed "was given a full Rule 11 colloquy." After that colloquy, Reed clearly stated he was guilty of the charges. Thus, the second factor weighs in the State's favor.

3.

**{¶31}** The third factor is whether the trial court held a "full hearing" on his motion to withdraw. While it did not schedule a separate hearing on a separate day, Reed did

not file a formal motion and the trial court still fully addressed Reed's oral motion when it heard testimony from Reed the day of sentencing. Reed asserts on appeal that he was not given a full hearing because his current counsel should have withdrawn and new counsel should have been appointed so that current counsel could have been a witness for Reed's motion. He does not point to anything in the record to which his new counsel would have testified that would have supported his motion; counsel did not comment on Reed's claims that he did not receive discovery one way or the other.

{¶32} This court has held that "[w]hile *Xie* states that a hearing is mandatory, it does not define the type of hearing that is required." *State v. Harmon*, 2021-Ohio-2610, ¶ 18 (4th Dist.), quoting *State v. Wolfson,* 2003-Ohio-4440, ¶ 16 (4th Dist.). Although a trial court must hold a hearing that complies with at least a minimum mandate of due process, including meaningful notice and a meaningful opportunity to be heard, the court still retains discretion to define the scope of the hearing to "reflect the substantive merits of the motion." *Id.* citing *Wolfson* at ¶ 16 and *State v. Wright*, 1995 WL 368319 *6 (4th Dist. June 19, 1995). In addition, "a trial court need not 'schedule a separate hearing' to comply with minimum due process standards." *Id.* at ¶ 19, quoting *State v. Glavic,* 143 Ohio App.3d 583, 589 (11th Dist. 2001). Instead, a defendant has been given a full and actual hearing on the merits as long as he has the "opportunity at a hearing to assert to the court the reasons why [he] should be able to withdraw his plea." *Id.* quoting *State v. Maistros*, 1982 WL 5253, *3 (8th Dist. Mar. 25, 1982) (internal citation omitted).

{¶33} The record reflects that Reed did not provide anything other than a self-serving statement that he did not receive discovery. Despite this fact, his attorney, the

State and the trial court itself questioned him at length to determine the basis for his

motion.  On appeal, Reed only speculates that had he been given new trial counsel,

then his previous counsel would have testified in a way to support this motion.  Reed's

claim therefore had dubious merit.  As a result, the hearing the court held was sufficient,

and this factor weighs in the State's favor.

4.

**{¶34}**  The fourth factor is whether the trial court gave full and fair consideration

to this motion, and the transcript reveals that the trial court specifically applied the

factors set forth above in determining whether a withdrawal of the plea was appropriate.

This factor also weighs in the State's favor.

5.

**{¶35}**  Whether the defendant filed the motion within a reasonable time is the fifth

factor.  Here, it is clear that Reed entered his guilty plea on July 31, 2020.  Although the

negotiated plea was nine months in prison, the trial court allowed a bond modification

before sentencing so that Reed could spend time with a terminally ill relative.  The

sentencing was then set for September 2, 2020.  At the time of sentencing, Reed failed

to appear, warrants were issued, and Reed did not appear before the court for

sentencing until July 12, 2023.  At that time, Reed made an oral motion to withdraw his

plea.

**{¶36}**  The trial court considered this factor and noted that the motion to withdraw

the plea was not made in a timely manner.  The trial court found that the first time Reed

even raised the issue was right before the parties came into the courtroom before

sentencing, or, at best, perhaps shortly after the 2023 sentencing hearing was set.  The

court acknowledged Reed had not appeared before the court for over two and a half

years.  The court determined that he had ample time to withdraw the plea, but instead

he chose "to run from the law, run from the jurisdiction of the court to try to put off the

consequences of his actions."  The trial court carefully considered this factor, and it, too,

weighs in the State's favor.

6.

{¶37}  As to the sixth factor, whether the defendant's motion gave specific

reasons for the withdrawal, weighs in Reed's favor.  Reed stated that he had not

reviewed discovery prior to making the plea, and that he believed law enforcement did

not have the authority to initiate a traffic stop.  This factor weighs in Reed's favor;

however, it does not carry significant weight because he did not indicate with specificity

why he felt a suppression motion would have been successful, and further, he did not

provide anything other than self-serving statements to support his claims.

7.

{¶38}  The seventh factor also weighs in favor of the State.  Reed at no time

claimed he did not understand the charges, the possible penalties, or the consequences

of the plea.

8.

{¶39}  The eighth factor is whether the defendant is "perhaps not guilty" or "has a

complete defense to the charges."  While defense counsel at one point asked Reed in a

leading question whether he was "innocent" of the charges, and Reed answered

affirmatively, his testimony does not bear this out.  Instead, it bears out that he did not

believe law enforcement had a legitimate reason to pull him over, and consisted

therefore of a suppression issue, even though he stated his defense counsel told him "well, you won't be able to get off on that."

**{¶40}** As the trial court observed after hearing Reed testify, "I'm going to find the [d]efendant's stated reason doesn't make sense.  It's not a reasonable legal basis for withdrawing his plea, because his basis for withdrawing his plea would have been information he had at the time he entered his plea.  There was nothing changed since then, except him having a change of heart because now he's picked up two more felonies, and he's potentially facing more time than what he was originally when he plead guilty to . . . this charge."  The trial court found as a matter of fact that Reed's reasons given constituted a "change of heart," and that his claims of newly discovered evidence were not credible. This factor also weighs against Reed, and in the State's favor.

9.

**{¶41}** The ninth and final factor is whether permitting the defendant to withdraw his plea will prejudice the State.  The trial court commented, "[c]ertainly, any time the State is in a position --two and a half years ago they're in a position to present a case to a jury where the recollection was fresh in the minds of the witnesses and the troopers that were involved in this case, the lab analyst that was involved in this case," would cause some prejudice.  While the State did not specifically argue at the hearing it would be prejudiced, such lack of evidence is understandable given the fact that Reed did not make his motion to withdraw until the shortly before the resentencing hearing.  However, nothing in the record indicates that any witnesses would be unavailable or that the State would suffer prejudice "beyond the ordinary impact of any defendant's

subsequent withdrawal of a guilty plea." *Gutierrez,* 2025-Ohio-1884, ¶ 59 (4th Dist.), quoting *State v. Harris,* 2010-Ohio-4127, ¶ 26 (10th Dist.). This factor therefore weighs in favor of Reed.

**{¶42}** At the conclusion of the trial court's consideration of these factors, the court asked Reed whether he had anything else to say. Reed responded, "I haven't seen no discovery of anything. I haven't seen nothing. I mean, I was there, I know what happened and the trooper had no reason to pull me over, whatsoever. It was 11:30 at night and when he did hit his lights, I was in my mother's driveway already." Thus, even assuming arguendo Reed had never seen the discovery, he was aware of any potential suppression issues at the time he was pulled over. These were not newly discovered "facts," they were only facts Reed brought to the court's attention after he failed to appear for a lengthy period of time.

**{¶43}** After reviewing these factors, as well as placing special emphasis on the factor of an allegation of "newly discovered evidence," we find the trial court did not abuse its discretion when it denied the motion to withdraw. The trial court's decision was not unreasonable, arbitrary, or unconscionable. The only factors which weigh in favor of granting the motion are that Reed gave specific reasons for the withdrawal, and the fact there is no evidence in the record that the State would be prejudiced by the withdrawal. In the instant case, the trial court observed that Reed was not credible, and the motivation was nothing other than a simple change of heart. The case at bar is distinguishable from *Barnes* in that Reed showed neither that he discovered evidence that (1) his attorney withheld from him or (2) would have negated his decision to plead guilty had he known about it. The trial court did not abuse its discretion.

{¶44} The record supports the finding that the motion to withdraw the plea was consistent with Reed simply having a "change of heart," because of the timing of his motion. When he failed to appear for almost three years, picked up new charges, and learned he may receive a greater penalty of 36 months, he then requested to withdraw his plea. For these reasons we overrule the second assignment of error.

## CONCLUSION

{¶45} Having overruled both of Reed's assignments of error, we affirm his conviction and sentence.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED.  Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. and Hess, J.:  Concur in Judgment and Opinion.


For the Court,


BY: _____
Kristy S. Wilkin, Judge


### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**